**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
AVEMARIA THOMPSON,

                              Plaintiff,                                **ORDER**

                  -against-                                       CV 14-2473 (JMA) (AKT)

THOMAS J. SPOTA, ROBERT EWALD,
and SUFFOLK COUNTY,

                              Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    RELEVANT BACKGROUND[1]**

Plaintiff AveMaria Thompson ("Thompson") brings the instant action against Suffolk County District Attorney Thomas J. Spota ("DA Spota" or the "DA"), Chief of the Narcotics Bureau Robert Ewald ("Chief Ewald" or "Ewald") and Suffolk County (the "County") (collectively, "the Defendants") alleging claims of race discrimination and retaliation arising under 42 U.S.C. § 1983. *See generally* Complaint ("Compl.") [DE 1]. Previously, Plaintiff was granted leave to file an Amended Complaint. *See generally* Amended Complaint. ("Am. Compl.") [DE 46]. Specifically, the Amended Complaint: (1) adds Suffolk County as a defendant; (2) adds claims for race discrimination and unlawful retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983; and (3) withdraws all claims asserted against ADA Wagner. Before the Court at this time is Plaintiff's motion to re-open the depositions of DA Spota, Chief Ewald and non-party Chief Assistant

---

[1]    The Court provided a detailed factual background previously in its Memorandum & Order addressing Plaintiff's Motion to Amend. *See* DE 43. As such, the Court respectfully refers the reader to that Memorandum & Order for a more fully developed description of the factual background of this litigation.

District Attorney Emily Constant ("ADA Constant" or "Constant"). *See* DE 67. Defendants oppose the motion. DE 68. For the reasons that follow, Plaintiff's motion is DENIED.

## II. MOTION TO RE-OPEN DEPOSITIONS

### A. The Parties' Contentions

Plaintiff brings the instant motion ostensibly in response to additional document discovery that was produced by Defendants in accordance with this Court's April 27, 2016 Order. *See* DE 65 (granting, in part, and denying, in part, Plaintiff's April 21, 2016 motion for discovery [DE 63]). The supplemental submissions include "evaluations and a termination notice related to Roshika [*sic*] Hettiarchchi [*sic*] . . . and notes related to employment issues involving two white ADAs, Meg Farrell and Susan Onorato." DE 67 at 1. In addition, "Defendants also identified a single African American candidate for an ADA position who was offered, but turned down, the position." *Id*. With respect to these submissions, Plaintiff contends that the depositions of DA Spota, Chief Ewald and ADA Constant — conducted in December 2015 — should be reopened in order to "further explore the decision-making process with respect to [Meg] Farrell ("Farrell") and [Susan] Onorato ("Onorato"), the involvement and knowledge of Spota, who made the decision to terminate Plaintiff, concerning Farrell and Onorato, and explanations for the disparities in the way Plaintiff and [Rasheka] Hettiarchchi [*sic*] ("Hettiarachchi") were treated as compared to the [*sic*] Farrell and Onorato." DE 67 at 2; *see* DE 67, Exhibit ("Ex.") A (excerpts of deposition testimony) (alterations added). Specifically, Plaintiff argues that "[t]he documents related to Ms. Farrell and Ms. Onorato show a striking inconsistency between the way Defendants handled the situations of Plaintiff and Ms. Hettiarchchi on the one hand and Ms. Farrell and Ms. Onorato on the other." DE 67 at 1.

2

In opposition, Defendants assert that "Plaintiff has had a full and fair opportunity to discover information about Ms. Hettiarachchi, Ms. Farrell and Ms. Onorato [since] Plaintiff was aware of all three ADAs long before the deposition of Spota, Ewald and Constant." DE 68 at 2. In particular, Defendants state that Plaintiff was aware of Ms. Hettiarachchi as early as the filing of the initial Complaint since that pleading directly refers to "the termination of a 'dark skinned female of South Asian national origin,' which is a clear reference to Ms. Hettiarachchi." *Id.* (quoting Comp. ¶ 9); *see also* Am. Compl. ¶ 9 (stating that "the NYSDHR based its finding [of probable cause that the Suffolk County DA's Office had discriminated and retaliated against Plaintiff], among other things, on [the] fact that the Suffolk DA only terminated one other ADA in 2013 – a dark skinned female of South Asian national origin"). In addition, "Plaintiff [ ] did not seek to discover information regarding Ms. Hettiarachchi in her initial discovery requests." DE 68 at 2. With respect to Onorato and Farrell, Defendants state that although Plaintiff alleged that (1) "'ADAs who engaged in far more serious misbehavior [then Plaintiff] . . . are not terminated'" and that (2) "Plaintiff's counsel confirmed that the plaintiff is aware of specific [ADAs] who purportedly engaged in conduct more egregious than the Plaintiff and who were not disciplined at all or not disciplined as severely," "Plaintiff's counsel did not identify any such individuals or otherwise pursue discovery of such individuals before the Spota, Ewald and Constant depositions." *Id*.

Further, during the Spota, Ewald and Constant depositions, "Plaintiff's counsel revealed that Ms. Farrell and Ms. Onorato were two of the individuals who purportedly received favorable treatment [and that] [d]espite ample opportunity to thoroughly question the witnesses about the treatment and discipline of Ms. Hettiarachchi, Ms. Farrell and Ms. Onorato, Plaintiff's counsel asked basic questions and chose not to ask additional questions." *Id*. As such, Defendants argue

that "the documents produced in response to [this Court's] April 27, 2016 Order did not reveal any new information. Instead, they contained information that was consistent with the testimony of Mr. Spota, Mr. Ewald and Ms. Constant." *Id*. at 2-3.

**B. Discussion**

*1. Applicable Law*

"A person who has previously been deposed in a matter may be deposed again, but only with leave of the court." *Sentry Ins. v. Brand Mgmt. Inc.*, No. 10 Civ. 347, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citing Fed. R. Civ. P. 30(a)(2)(A)(ii)); *see Dash v. Seagate Tech. (US) Holdings, Inc.*, No. 13-6329, at *6 (E.D.N.Y. July 14, 2015). "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as 'whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit.'"[2] *Sentry Ins.*, 2012 WL 3288178, at *8 (quoting *Ganci v. U.S. Limousine, Ltd.*, No. 10-3027, 2011 WL 4407461, at *2 E.D.N.Y. Sept. 21, 2011)) (collecting cases). "Courts will typically re-open a deposition where there is new information on which a witness should be questioned." *Id.* (quoting *Ganci*, 2011 WL 4407461, at *2); s*ee, e.g*, *Vincent v. Mortman*, No. 04 Civ. 491, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to re-open deposition when one witness' deposition contradicted defendants' deposition and medical records); *Chang v. Safe Horizons*, No. 03 Civ. 10100, 2004 WL 1874965, at *2 (S.D.N.Y. Aug. 18, 2004); *Keck v. Union Bank of Switzerland*, No. 94 Civ. 4912, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition re-

---

[2] Pursuant to the Amendment of the Federal Rules which took effect on December 1, 2015, the burden versus benefit analysis is no longer contained in Rule 26(b)(2). Instead, that balancing test is contained within Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1).

opened where affidavit provided evidence conflicting with witness testimony). Where the deposition is re-opened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information. *See Vincent*, 2006 WL 726680, at *2; *Keck*, 1997 WL 411931, at *2–4; *Dash*, 2015 WL 4257329, at *6. In addition, courts will also re-open a deposition "where the witness was inhibited from providing full information at the first deposition." *Miller v. Massad-Zion Motor Sales Co.*, No. 3:12 CV 1363, 2014 WL 4979349, at *2 (D. Conn. Oct. 6, 2014) (internal quotations and citation omitted); *see Keck*, 1997 WL 411931, at *1; *Sentry Ins.*, 2012 WL 3288178, at *7.

### 2. *Application to the Facts*

As an initial matter, the Court points out that Plaintiff's motion was untimely when it was filed since the deadline for completion of fact discovery (after being extended by this Court three times) was April 2, 2016. *See* March 2, 2016 Electronic Order (extending the discovery deadline by 30 days and advising the parties that no further extensions would be granted). Although the Court subsequently granted Defendants a brief extension of time — from May 11, 2016 to May 20, 2016 — to comply with the Court's April 27, 2016 Order [DE 65], such an extension was granted only for this limited basis and did not serve to concomitantly extend Plaintiff's time to engage in discovery-related motion practice. Significantly, Plaintiff did not seek leave, either prior to or contemporaneously with, the instant motion, to re-open discovery, nor has counsel addressed the factors applicable to such an inquiry, which are grounded upon whether "good cause" exists. *See Torres v. Dematteo Salvage Co. Inc.*, No. CV14774, 2016 WL 845326, at *4 (E.D.N.Y. Mar. 2, 2016) (setting forth the six-factor test and recognizing that "[a] party seeking to reopen discovery bears the burden of establishing good cause"); *Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. 07-CV-5315, 2010 WL 4038765, at *6 (E.D.N.Y. Sept. 30,

2010) (quoting *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-776, 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008)). Nevertheless, given the passage of time, the Court will address the merits of Plaintiff's motion.

The *gravamen* of Plaintiff's argument in support of re-opening the depositions of DA Spota, Chief Ewald and ADA Constant rests primarily on the premise that the documents produced by Defendants in response to this Court's April 27, 2016 Order revealed new information upon which each of these witnesses should be questioned. *See* DE 67 at 2. However, the court is not convinced that the information set forth in these additional materials is "new." Rather, a review of the Complaint, the Amended Complaint, the deposition excerpts and prior Orders of this Court supports the alternative conclusion that such information amplifies and perhaps confirms certain information already in Plaintiff's possession concerning these three former ADAs. *See* Compl. ¶ 9 (referring a "dark skinned female of South Asian national origin"); Am. Compl. ¶ 9 (noting that the NYSDHR probable cause determination referenced a "dark skinned female of South Asian national origin" as the only other ADA who was terminated by the Suffolk County DA in 2013); DE 42 ¶ 5 ( February 11, 2015 Minute Order recognizing that "In response to the Court's inquiry, plaintiff's counsel confirmed that the plaintiff is aware of specific Assistant District Attorneys who purportedly engaged in conduct more egregious than the plaintiff and who were not disciplined at all or not disciplined as severely as the plaintiff. I have directed plaintiff's counsel to confer with his client and to obtain the specific names of these individuals. The Court finds that this information is relevant to plaintiff's claim that she was selectively disciplined. Plaintiff's counsel can either serve an amended interrogatory or work out this issue in an alternative manner with defendants' counsel.").

In addition, during the depositions of DA Spota, Chief Ewald and ADA Constant, Plaintiff embarked upon a short line of questioning concerning the performance issues and terminations/resignations of Hettiarachchi, Farrell and Onorato. *See, e.g.*, DE 68, Ex. A (Excerpts from depositions of DA Spota, Chief Ewald and ADA Constant). Notwithstanding these inquiries, Plaintiff appears to have made the decision to forego further development of this inquiry despite having had the opportunity to do so. For example, during ADA Constant's deposition the following colloquy took place:

> Q: How many people have you told they are terminated?
>
> A: One. No, two, Ms. Thompson and Ms. Hettiarchi [*sic*]
>
> Q: Let's start with that. And what other people have been terminated by the office that you have been involved in the decision to terminate?
>
> A: Mr. Blakey.
>
> Q: Didn't he resign?
>
> A: He did, but he would have been terminated.
>
> Q: Anyone else?

DE 68, Ex. A. This excerpt illustrates that although ADA Constant expressed that she had been involved in the termination of Hettiarachchi, Plaintiff did not ask any follow-up questions as to the nature and circumstances surrounding Hettiarachchi's termination. Relevant follow-up could have provided the information that Plaintiff now seeks to obtain through the re-opening of Constant's deposition.

Similarly, Plaintiff abandoned a more granular line of questioning during the depositions of both DA Spota and Chief Ewald related to inquiries concerning Onorato and Farrell

7

respectively.[3] Again, had Plaintiff more fully developed the inquiry at that point, additional relevant information could have been obtained. The deposition excerpts provided make clear, however, that Plaintiff was presented with certain information concerning the overall facts and circumstances surrounding each individual's termination or resignation from the Suffolk County DA's Office. As such, although the documents which were turned over to Plaintiff approximately five months later may have amplified the basic information which was obtained during these depositions, it is inappropriate to characterize the information contained within the documents — which dealt solely with Hettiarachchi, Farrell and Onorato — as "new" information that would otherwise warrant re-opening these depositions. *See Dash*, 2015 WL 4257329, at *6 (denying defendant's request to re-open deposition where "Defendant's counsel had the opportunity to examine Dash with follow-up questions regarding the other drives that he testified he purchased and used during the relevant period. Although Plaintiff made reference to a number of external drives during his deposition, Seagate's counsel apparently did not probe further into these responses. . . ."; *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV135475, 2016 WL 1180194, at *1 (E.D.N.Y. Mar. 25, 2016) (denying Plaintiff's motion to re-open deposition to "inquire as to the contents of an affidavit" where "Plaintiff had the opportunity to depose [Defendant] regarding his authority and role at Exeter during the original deposition" and concluding that "this is not a case where Plaintiff was inhibited at the original deposition from addressing [Defendant's] role and authority at Exeter."); *Miller v. Massad-Zion Motor Sales Co.*, No. 3:12 CV 1363, 2014 WL 4979349, at *3 (D. Conn. Oct. 6, 2014) ("[P]laintiff is not entitled to reopen the deposition with respect to the handwritten

---

[3] The Court's analysis is inhibited to the extent that neither party provided it with a complete copy of the deposition transcripts at issue. Rather, only excerpts that the parties deemed relevant to this inquiry were supplied.

notes, in that she already was in possession of them prior to defendant Zion's deposition and thus could have inquired about them had she chosen to do so.").

Although Plaintiff cites this Court's decisions in *Ganci v. U.S. Limousine Serv., Ltd.*, and *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, as well as Magistrate Judge Mann's decision in *Sentry Ins. v. Brand Mgmt. Inc.*, to support her position that the depositions should be re-opened because "new documents have been produced that contain information highly relevant to Plaintiff's claims," these cases are distinguishable from the facts here and therefore warrant a different result. *See e.g.*, *Ganci*, 2011 WL 4407461, at *2 (deposition re-opened to permit inquiry into information received in response to particular FOIL requests not otherwise available during initial deposition); *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV 135475, 2016 WL 1180194, at *1 (E.D.N.Y. Mar. 25, 2016), at *4 (permitting deposition to be re-opened to address purportedly *new* information "contained in the boxes produced after [defendant's] deposition" based upon defendant's "inability at the original deposition to recall reviewing documents from the business files of Exeter."); *Sentry Ins.*, 2012 WL 3288178, at *8 (granting plaintiff's motion to re-open defendant's deposition where defendant "unjustifiably failed to produce [the documents at issue] at his first deposition").

Notwithstanding Plaintiff's insistence that the documents produced in response to this Court's April 27, 2016 Order constitute newly discovered evidence, the Court respectfully disagrees. Rather, the basic information set forth in these documents could have been gleaned or at least addressed during the respective depositions of DA Spota, Chief Ewald and ADA Constant. Indeed, as noted, Plaintiff's counsel engaged in a relevant line of questioning concerning Hettiarachchi, Farrell and Constant. Therefore, counsel could have probed these

9

matters further had he sought to do so. The mere fact that Plaintiff was provided additional documents containing further detail regarding a factual area previously known to and addressed (to a limited extent) by Plaintiff during the original depositions is not tantamount to receiveing new information sufficient to re-open these depositions. *See Dash*, 2015 WL 4257329, at *6 (denying defendant's request to re-open plaintiff's deposition where "the facts concerning Plaintiff's purchase and use of other external drives were available to Defendant's counsel *during* Plaintiff's deposition" and "find[ing] that counsel either neglected or affirmatively opted to forego this area of inquiry"); *Miller*, 2014 WL 4979349, at *3

Further, to the extent Plaintiff seeks to re-open DA Spota's deposition based solely upon an alleged inconsistency between the "single African American candidate who rejected the ADA position" (as reflected in the May 20, 2016 letter from Defendants' counsel, DE 67, Ex. 4), and DA Spota's testimony that "'we had many turn us down,'" and the "'common refrain' from African American candidates is that "'they cannot afford to come to Suffolk County,'" *id.*, Ex. 5, the Court finds the rationale insufficient in light of the minimal relevance of this specific information to Plaintiff's claims. Put another way, although this inconsistency may bear on DA Spota's ultimate credibility, it does not strike at the heart of Plaintiff's allegations. Therefore, to re-open DA Spota's deposition for the singular purpose of clarifying this inconsistency, would, in this Court's view, outweigh any potential benefit that could be otherwise achieved. *See Sentry Ins.*, 2012 WL 3288178, at *8.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to re-open the depositions of Defendants DA Spota, Chief Ewald and non-party Constant is DENIED.

10

**SO ORDERED.**

Dated: Central Islip, New York
       March 27, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge