UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AVEMARIA THOMPSON,

                Plaintiff,

    - against -

THOMAS J. SPOTA, ROBERT EWALD, and
SUFFOLK COUNTY,

                Defendants.
-----------------------------------------------------------X

**ORDER**

CV 14-2473 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Counsel for the Individual Defendants Thomas J. Spota and Robert Ewald have moved, pursuant to Fed. R. Civ. P. to permanently seal certain records and information in this case. *See* DE 108 ("Notice of Motion to Permanently Seal Certain Records and Information"). Specifically, Defendants seek to permanently seal Exhibits 16 and 22 annexed to the Declaration of Plaintiff's counsel, Jason Solotaroff, Esq., [DE 88] in the opposition to Defendants' Motion for Summary Judgment. Attorney Solotaroff describes Exhibit 16 as "documents related to ADA ADA #1 [redacted] produced by defendants in this action" and Exhibit 22 as "documents related to ADA ADA #2 [redacted] produced by defeffdants [*sic*] in this action." Declaration of Jason L. Solotaroff, Esq. in Opposition to the Motion for Summary Judgment of Defendants Thomas J. Spota and Robert Ewald and the Motion for Summary Judgment of Suffolk County ("Solotaroff Decl."), ¶¶ 14, 20. Defendants' counsel also seeks to seal the "private and identifying information in Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Docket No. 92]." DE 108. Defendants have also filed a Memorandum of Law [DE 109] and the Declaration of Mary Ellen Donnelly, Esq., in Support of Defendants Thomas Spota's and

Robert Ewald's Motion to Permanently Seal Certain Records and Information ("Donnelly Decl.") [DE 110]. The Court points out that Plaintiff has not filed any opposition to Defendants' motion.

In her Declaration, Defendants' Attorney Donnelly states the following:

> 7. Exhibit 16 to the Solotaroff Declaration consists of documents bates-stamped D001756-D001798. These documents are from the personnel records of a former ADA in the *Major Crimes Bureau* of the DA's Office and detail her employment history, disciplinary record, performance evaluations, and termination in 2007. All of these documents are confidential and it is my understanding that none have been disseminated into the public domain.
>
> 8. Exhibit 22 to the Solotaroff Declaration consists of documents bates-stamped D001799-D001801. These documents are from the personnel records of a former ADA in the *Environmental Crimes Unit* of the DA's Office, who was effectively terminated in 2003. These documents contain highly sensitive and private information concerning an investigation of a sexual harassment complaint and eventual termination of the ADA's employment. All of these documents are confidential and it is my understanding that none have been disseminated into the public domain. Indeed, the documents are specifically identified on their face as included in the ADA's personnel file "under seal," and "It is not to be read or disclose except as permitted by the District Attorney, Chief Assistant District Attorney or either Division Chief."

Donnelly Decl. ¶¶ 7,8 (emphasis in the original). According to Attorney Donnelly, her office sent a letter to Attorney Solotaroff on November 16, 2017 requesting "his consent to file Exhibits 16 and 22 under seal, given the sensitive and confidential information they contain." *Id.*, ¶ 9. Attorney Donnelly represents that Mr. Solotaroff "refused to consent absent a court order." *Id.*; *see also* Donnelly Decl., Ex. C (November 16, 2017 E-mail string between Steven J. Seidenfeld, Esq. and Jason Solotaroff, Esq. regarding request to seal documents).

At the outset, the Court notes that the parties never entered into a Stipulation and Order of Confidentiality or any other form of protective order at any point as to the pre-trial phase of this

case. Defendants' counsel states that the documents they seek to seal were "conditionally filed under seal on November 17, 2017."[1] Defendants' Memorandum of Law in Support of an Order Permanently Sealing Certain Records and Information ("Defs.' Mem.") [DE 109] at 2.

"Much of the material produced in discovery is neither incorporated in motions made to the court nor admissible at trial. In order to mitigate the substantial risk tof litigants' privacy and other rights posed by the expansive scope of pretrial discovery, courts are given broad discretion in Rule 26(c) to craft sealing orders 'which justice requires to protect the party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting Fed. R. Civ. P. 26(c)). However, since protective orders also implicate the public's First Amendment and common law right of access to the courts, Rule 26(c) requires the party seeking the order to demonstrate good cause. *See In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *In re Terrorist Attacks on Sept. 11, 2011*, 454 F. Supp. 2d 220, 221 (S.D.N.Y. 2006).

In determining whether good cause has been shown, courts must weigh the private interests advanced against the public's interest in the information contained in the documents. *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 505 (E.D.N.Y. 1999); *see also*

---

[1] The docket reflects a November 17, 2017 letter from Defendants' counsel to Judge Azrack [DE 99] stating the following: "On November 16, 2017, we wrote to Plaintiffs counsel requesting his consent to file Exhibits 16 and 22 to the Solotaroff Declaration (Docket Entry No. 88), under seal since they contain sensitive and confidential information. Plaintiffs counsel informed us that he would not consent absent a court order. Therefore, the Individual Defendants intend to promptly file an application with Magistrate Judge Tomlinson requesting that these two exhibits be filed under seal pursuant to Your Honor's Individual Practice Rule IV.A.9. As a result, the Individual Defendants have not filed these exhibits pending resolution of their forthcoming application. These exhibits are, however, included in Your Honor's courtesy copy of themotion papers."

*In re Zyprexa Injunction*, 474 F. Supp. 2d at 415 ("Balancing requires taking into account litigants' privacy rights as well as the general public's interest in the information."). Therefore, "Rule 26(c)'s 'good cause' analysis is informed by the common law presumption of public access." *Standard Investment Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 61 (S.D.N.Y. 2007).

The existence of a common law right of public access to judicial documents is clear. *See Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597-98 ("[T]he courts of this county recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Gambale v. Deutsche Bank*, 377 F.3d 133, 140 (2d. Cir. 2004) (public has a common law presumption right of access to judicial documents). However, that right of access is not absolute. The Second Circuit has enumerated the steps that a district court must take when deciding whether to issue a protective order, the first of which is determining whether the documents(s) at issue is a judicial document" *Standard Investment*, 621 F. Supp. 2d at 62 (citing *Lugosch v. Pyramid Co. Of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)). If the document is not "judicial," then there is "no presumption of public access and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order." *Id.* at 62. In *Standard Investment*, the court spent considerable time discussing the framework established by the Second Circuit in *Lugosch* for determining whether a document is judicial. Citing *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("Amodeo II"), the court in *Standard Investment* agreed with the defendant that certain documents did not qualify as judicial based on the guidance provided in *Amodeo II* that documents "passed between the parties in discovery lie entirely beyond the presumption's reach . . . ." *Standard Investment*, 621 F. Supp. 2d at 63

4

(quoting *Amodeo II*, 71 F.3d at 1050). As Judge Kram noted, "[a]t the first *Lugusch* step, however, the Court is only focused on what role the documents played in the underlying litigation." *Id.* Finding that the unfiled documents did not figure in any way into the court's performance of its Article III functions, Judge Kram held that the documents did not qualify as judicial and therefore carried no presumption of public access.

The personnel files of the two former ADAs have been submitted to the Court as exhibits to the summary judgment motion. "Documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches." *Lugosch*, 435 F.3d at 121. Once a court determines that the documents are judicial documents, the court must then evaluate the weight to be accorded the presumption of public access which attaches. Even judicial documents can be restricted under the right circumstances. *See Nixon*, 435 U.S. at 598 (determining that "the right to inspect and copy judicial records is not absolute" as "every court has supervisory power over its own records and files"). The presumption created "is based on the need for federal courts, although independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice" and such public monitoring "is not possible without access to testimony and documents that are used in the performance of Article III functions." *Amodeo II*, 71 F.3d at 1048. The strength of the presumption "will vary with its role in the adjudicatory process." *Cumberland Packing Corp.*, 184 F.R.D. at 505. Therefore, the presumption in favor of public access to judicial documents will be given the strongest weight possible where the documents played a role in determining litigants' substantive rights, and, as the documents role becomes more attenuated from the exercise of Article III judicial power, the weight of the

5

presumption declines. *Id.*

Once a court determines the weight of the presumption of access, it is to apply the third *Lugosch* factor, namely, balancing the competing considerations against the presumption. *Amodeo II*, 44 F.3d at 1050; *Standard Investments*, 621 F. Supp. 2d at 62-63. "One benchmark for judging the importance of a privacy right is 'the degree to which the subject matter is traditionally considered private rather than public.'" *In re Savitt/Adler Litigation*, No. 95-CV-1842, 1997 WL 797511, at *2 (N.D.N.Y. Dec. 23, 1997) (quoting *Amodeo II*, 71 F.3d at 1051).

Generally, "an employer has an 'interest in maintaining the confidentiality of employee personnel files.' " *Sperling v. Harman Int'l Indus., Inc.*, No. CV 10-2415, 2011 WL 4344165, at *2 (E.D.N.Y. Sept. 14, 2011) (quoting *Duck v. Port Jefferson Sch. Dist.*, No. 07 CV 2224, 2008 WL 2079916, at *4 (E.D.N.Y. 2008)); *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 106 (E.D.N.Y. 2013). However, "there is no rigid rule prohibiting discovery of employee personnel files." *Sperling*, 2011 WL 4344165, at *2; *Barella*, 296 F.R.D. at 106. Thus, where maintaining privacy remains a primary hurdle to disclosure, "in most cases, a protective order can "appropriately remedy privacy concerns arising from discovery of personnel records." *Barella*, 296 F.R.D. at 106; *Sperling*, 2011 WL 4344165, at *2; *see Ladson v. Ulltra E. Parking Corp.*, 164 F.R.D. 376, 377 n. 2 (S.D.N.Y. 1996).

Particularly with respect to privacy interests, the Second Circuit has "held that the privacy interests of innocent third parties should weigh heavily in a court's balancing equation. Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *United States v. Amodeo* ("*Amodeo II*"),

71 F.3d 1044, 1050-51 (2d Cir. 1995) (internal citations, quotations and alterations omitted);

*Travelers Indem. Co. v. Excalibur Reins. Corp.*, 3:11-CV-1209, 2012 WL 13029602, at *9 (D. Conn. May 10, 2012). The Court points out that these two ADAs are not mentioned in the Amended Complaint at all. They are barely mentioned in the summary judgment motion papers. They worked in a different bureau in the DA's Office from the Plaintiff and were not supervised by Defendant Ewald. The information involved is highly confidential, is particularly sensitive and embarrassing and has little if any relevance to the Plaintiff's claims given their termination dates some 15 and 11 years ago. In addition, the DA's Office treatment of these files itself is significant in this discussion since that office has designated the files as "under seal" and "not to be disclosed except as permitted by the District Attorney, Chief Assistant District Attorney or either Division Chief."

Rather than sealing the entire documents in Exhibits 16 and 22, the Court shall seal only the references to the identity of the two ADAs. Such redactions are "feasible and sufficiently 'narrowly tailored' to achieve the ends of protecting a non-party to the case at bar" yet leaving the files subject to public access. *Travelers Indem. Co.*, 2012 WL 13029602, at *9. And as noted previously, Plaintiff's counsel has not opposed this motion. Therefore, the original of this Order as well as the originals of the summary judgment motion papers where these references are contained shall be sealed. The non-party former ADA's names shall be redacted in this Order as well as in the summary judgment motion papers and exhibits filed by the Plaintiff. In place of the actual names, the designation "ADA #1 and ADA #2" shall be utilized.[2] Plaintiff's counsel is

---

[2] The Report and Recommendation on the summary judgments motions which is also being issued today will appear with the names redacted on the public docket and the original filed

7

directed to file redacted versions of his motion papers and exhibits in conjunction with this Order within ten days.

**SO ORDERED.**

Dated: Central Islip, New York
August 23, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

under seal.