UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
AVEMARIA THOMPSON                          :
    Plaintiff                        :
                                                      :
   v.                                          : 14-CV-02473 (JMA) (AKT)
                                                      :
THOMAS J. SPOTA, ROBERT EWALD,    :
and KATHLEEN WAGNER,                    :
                                                      :
    Defendants                      :
                                                      :
---------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR RECONSIDERATION

              PUTNEY, TWOMBLY, HALL & HIRSON LLP
              *Attorneys for Defendants Thomas J. Spota and*
              *Robert Ewald*
              521 Fifth Avenue
              New York, New York 10175
              (212) 682-0020

Of Counsel:
  Mary Ellen Donnelly
  Rebecca K. Kimura

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

    A.    APPLICABLE STANDARD........................................................................ 2

    B.    THE COURT OVERLOOKED EVIDENCE OF A CHANGE IN DISCRIPLINARY POLICY INSTITUTED YEARS BEFORE PLAINTIFF WAS TERMINATED ................................................................. 4

    C.    THE COURT MISAPPLIED THE LAW TO FIND THAT THE FIVE ADAS IDENTIFIED BY PLAINTIFF WERE SIMILARLY SITUATED .... 8

    D.    THE COURT MISAPPLIED THE LAW TO FIND EVIDENCE OF DISCRIMINATORY INTENT ...................................................................... 11

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*,
    555 F. Supp.2d 335 (E.D.N.Y. 2008) ....................................................................................3

*Arnold v. Geary*,
    981 F.Supp.2d 266 (S.D.N.Y. 2013), *aff'd*, 582 Fed. App'x. 42 (2d Cir. 2014) ......................2

*Barbera v. Pearson Education, Inc.*,
    2018 WL 4939772, -- F.3d -- (7th Cir. Oct. 12, 2018) ..........................................................8, 9

*Baugh v. City of Milwaukee*,
    823 F. Supp. 1452 (E.D. Wis. 1993), *aff'd*, 41 F.3d 1510 (7th Cir. 1994) ..............................5

*Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*,
    215 F.3d 219 (2d Cir. 2000) ....................................................................................................5

*Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr.
    Servs. Corp.*,
    No. 12-CV-3940, 2015 WL 1443038 (E.D.N.Y. Mar. 27, 2015) .............................................6

*Desir v. Board of Coop. Educ. Servs. (BOCES) Nassau Cty.*,
    803 F.Supp.2d 168 (E.D.N.Y. 2011) ........................................................................................8

*Fair Housing in Huntington Committee v. Town of Huntington*,
    No. 02-CV-2787, 2005 WL 3184273 (E.D.N.Y. Nov. 29, 2005) .............................................3

*Female Port Auth. Officer 47708 v. Port. Auth. of New York & New Jersey*,
    No. 15-CV-6359, 2018 WL 3489569 (E.D.N.Y. July 19, 2018) .....................................11, 13

*Kelly v. Times/Review Newspapers Corp.*,
    No. 14-CV-2995, 2018 WL 1701999 (E.D.N.Y. Feb. 15, 2018) .............................................6

*Microsoft Corp. v. AGA Sols., Inc.*,
    No. 05-CV-5796, 2009 WL 1033784 (E.D.N.Y. Apr. 17, 2009) .............................................3

*Norton v. Town of Islip*,
    No. 04-CV-3079, 2013 WL 84896 (E.D.N.Y. Jan. 7, 2013) ....................................................3

*O'Brien v. Board of Educ. of Deer Park Union Free School Dist.*,
    127 F.Supp.2d 342 (E.D.N.Y. 2001) ........................................................................................3

*Pall Corp. v. 3M Purification Inc.*,
    No. 03-CV-92, 2015 WL 5009254 (E.D.N.Y. Aug. 20, 2015) .................................................2

*Placide-Eugene v. Visiting Nurse Serv. of New York*,
    86 F.Supp.3d 132 (E.D.N.Y. 2015) ...................................................................................8

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)..............................................................................3, 8, 11

*Shumway v. United Parcel Serv., Inc.*,
    118 F.3d 60 (2d Cir. 1997)...................................................................................8

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001).................................................................................13

*Thomas v. United States*,
    No. 02-CV-6254, 2005 WL 2104998 (S.D.N.Y. Sept. 1, 2005)..................................................4

*Vaughn v. Consumer Home Mortgage Co.*,
    No. 01-CV-7937, 2007 WL 140956 (E.D.N.Y. Jan. 22, 2007) .................................................3

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)................................................................................3

**Federal Statutes**

42 U.S.C. § 1983................................................................................................1, 4

**Rules**

Federal Rule of Civil Procedure 59(e) .........................................................................2

Local Civil Rule 6.3............................................................................................2

# PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Individual Defendant, Thomas J. Spota (Mr. Spota"), by and through his attorneys, Putney, Twombly, Hall & Hirson LLP, in support of his Motion for Reconsideration of the Court's September 30, 2018 Order denying Defendants' motion for summary judgment as to Plaintiff AveMaria Thompson's ("Plaintiff") Section 1983 race discrimination claim against Mr. Spota.

Plaintiff, a former Assistant District Attorney ("ADA") with the Suffolk County District Attorney's Office ("DA's Office"), brought this action against Suffolk County ("the County") and her former supervisors, Mr. Spota and Robert Ewald ("Mr. Ewald") ("Individual Defendants') (collectively "Defendants"), alleging that Defendants discriminated against her on the basis of her race and retaliated against her for engaging in protected activity based upon her race, in violation Title VII and 42 U.S.C. § 1983. On November 17, 2017, Defendants moved for summary judgment, submitting substantial evidence that Plaintiff's employment with the DA's Office was terminated due to her chronic, unannounced and unexcused lateness in arriving for work, as well as her insubordination and unwillingness to change her behavior despite repeated counseling from her supervisors.

On August 23, 2018, Magistrate Judge A. Kathleen Tomlinson issued her Report and Recommendation ("R&R"), granting Defendants' motion as to all claims against Mr. Ewald, and as to Plaintiff's retaliation and hostile work environment claims, but denying Defendants' motion as to Plaintiff's race discrimination claim under Section 1983 against Mr. Spota and under Title VII against the County. [Dkt No. 115] In the R&R, Magistrate Judge Tomlinson found evidence of pretext in Plaintiff's termination solely because Plaintiff argued in her Opposition papers that other ADAs outside Plaintiff's protected group were allowed to resign in lieu of termination.

However, Magistrate Judge Tomlinson refused to consider evidence properly submitted in response to Plaintiff's argument, showing that those other ADAs were not proper comparators because they were subjected to a different disciplinary standard under a different policy implemented by a different Division Chief during a different time period.

On September 6, 2018, Mr. Spota filed his Objections to Magistrate Judge Tomlinson's R&R. [Dkt No. 117] Plaintiff filed her response on September 20, 2018. [Dkt No. 124] On September 30, 2018, the Court issued its Order, adopting in full Magistrate Judge Tomlinson's R&R, and denying Individual Defendants' motion for summary judgment against Mr. Spota on Plaintiff's race discrimination claim. [Dkt No. 125]

For the reasons stated herein, Mr. Spota respectfully requests that the Court reconsider its September 20, 2018 Order adopting Magistrate Judge Tomlinson's recommendation as to Plaintiff's race discrimination claim against Mr. Spota, and in particular, the recommendation to decline consideration of Defendants' argument and evidence concerning the change in disciplinary policy at the DA's Office, and the finding of pretext in Mr. Spota's decision to terminate Plaintiff's employment under a different policy and during a different time period than alleged comparators.

## ARGUMENT

**A.    APPLICABLE STANDARD**

In this District, motions for reconsideration are governed by Local Civil Rule 6.3. *Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92, 2015 WL 5009254, at *1 (E.D.N.Y. Aug. 20, 2015). Courts will consider case law arising under both Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e), because the standards are identical. *Arnold v. Geary*, 981 F.Supp.2d 266, 268–69 (S.D.N.Y. 2013), *aff'd*, 582 Fed. App'x. 42 (2d Cir. 2014). While the standard for a

motion for reconsideration is "strict," such motions may be granted if: (1) there is an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a "clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). While a party may not advance new facts or arguments, it may introduce relevant authority that was not before the court when it initially ruled on the matter. *Vaughn v. Consumer Home Mortgage Co.*, 2007 WL 140956 at *6 (E.D.N.Y. Jan. 22, 2007). Introduction of additional relevant case law has been treated as "data that the court has not previously considered." *Shrader*, 70 F.3d at 257.

In that manner, courts have found that reconsideration is appropriate where it **"misinterpreted or misapplied" relevant case law** in its original decision, **did not "properly consider" facts** cited in its original order, or **"overlooked" data** or matters that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *O'Brien v. Board of Educ. of Deer Park Union Free School Dist.*, 127 F.Supp.2d 342, 346 (E.D.N.Y. 2001); *Fair Housing in Huntington Committee v. Town of Huntington*, 2005 WL 3184273, at *6 (E.D.N.Y. Nov. 29, 2005). Indeed, courts have found the following to be adequate grounds to reconsider its rulings: *See, e.g., Norton v. Town of Islip*, 2013 WL 84896 at * 4 (E.D.N.Y. Jan. 7, 2013) (granting reconsideration where "court overlooked a matter of controlling law" because the error was "precisely the type that should be corrected through a motion for reconsideration"); *Microsoft Corp. v. AGA Sols., Inc.*, 2009 WL 1033784, at *3 (E.D.N.Y. Apr. 17, 2009) (granting reconsideration where the court was directed to overlooked evidence submitted on original motion); *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 555 F. Supp.2d 335, 338 (E.D.N.Y. 2008) (granting reconsideration where party

cited additional relevant authority rendered before and after original order); *Huntington*, 2005 WL 3184273, at *4 (granting reconsideration because "proper consideration of [facts cited in original order] mandates a different result"); *Thomas v. United States*, 2005 WL 2104998, at *2 (S.D.N.Y. Sept. 1, 2005) (granting motion for reconsideration "to correct a legal error and prevent manifest injustice"). Mr. Spota's motion for reconsideration should be granted because the Court overlooked critical facts and misapplied relevant case law, resulting in "clear error." Specifically: (1) the Court overlooked evidence of a change in disciplinary policy instituted years before Plaintiff was terminated; (2) the Court misapplied the law to find that the five ADAs identified by Plaintiff in her Opposition papers were similarly situated; and (3) the Court misapplied the law to find evidence of discriminatory intent by Mr. Spota. These factors might reasonably be expected to alter the conclusion reached by the Court and thus warrant reconsideration and amendment of the September 30, 2018 Order as to Plaintiff's 1983 race discrimination claim against Mr. Spota.

**B.  THE COURT OVERLOOKED EVIDENCE OF A CHANGE IN DISCIPLINARY POLICY INSTITUTED YEARS BEFORE PLAINTIFF WAS TERMINATED**

Plaintiff raised the argument in her Opposition to summary judgment that five Caucasian ADAs with performance issues were allowed to resign in lieu of termination. [Dkt No. 92] In response, Individual Defendants submitted credible, admissible evidence that those ADAs were subjected to a different disciplinary standard applied by a former Division Chief during a different time period, and that thereafter, there was a change in disciplinary policy instituted by the current Division Chief Edward Heilig years before Plaintiff's employment was terminated, negating any suggestion of pretext. [Dkt Nos. 93, 96] Magistrate Judge Tomlinson refused to consider the Individual Defendants' arguments and Division Chief Heilig's affidavit addressing the policy change, stating it constituted "new evidence" submitted with Defendants' Reply

4

papers. [Dkt No. 115 at 54-55]. The Order adopting Magistrate Judge Tomlinson's recommendation that evidence of the change in disciplinary policy should not be considered constituted clear error.

The arguments and evidence of a change in disciplinary policy submitted in the Individual Defendants' Reply papers should have been considered because it did not constitute "new evidence" or new reasons to support the entry of summary judgment, but instead directly responded to factual assertions made by Plaintiff in her Opposition papers. "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226-27 (*quoting Litton Indus. V. Lehman Bros. Kuhn Loeb Inc*., 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir.1992). *See also Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993), *aff'd*, 41 F.3d 1510 (7th Cir. 1994) ("where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers -- both briefs and affidavits -- may properly address those issues).

Here, the Individual Defendants had already raised the argument in their moving papers that there was no evidence of similarly situated comparators who were treated better than Plaintiff. Defendants' Reply papers simply responded to the misleading assertion in Plaintiff's Opposition that five particular ADAs outside the relevant time were treated better because they were given the option to resign. It was not evidence the Individual Defendants relied upon to support their motion for summary judgment and was not required to be included in their moving papers. To find otherwise would require a moving party to anticipate every single unmeritorious argument that could be made and present evidence to negate the arguments in its moving papers.

5

Defendants simply had no such obligation. *See Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-CV-3940, 2015 WL 1443038, at *8 (E.D.N.Y. Mar. 27, 2015) ("[moving party] did not have an obligation to anticipate in their opening papers the specific arguments [nonmoving party] raised in its opposition; their response to those arguments was properly raised in their reply"); *Kelly v. Times/Review Newspapers Corp.*, No. 14-CV-2995, 2018 WL 1701999 at * 7 (E.D.N.Y. Feb. 15, 2018) (finding that medical records submitted in reply papers solely for the purpose of impeaching factual representations made by the plaintiff in his opposition papers did not constitute new arguments and should properly be considered).

Moreover, Individual Defendants' Reply papers contained no new information or documentation that was a surprise or prejudice to Plaintiff. Plaintiff was well aware of the change in policy, as it was addressed by Mr. Spota, Mr. Heilig and Ms. Constant in each of their depositions. In fact, testimony about the change in policy was not presented for the first time in the Reply papers. Individual Defendants included evidence of the change in policy in their moving papers, as did Plaintiff in her Opposition papers. Specifically, Individual Defendants submitted the following relevant deposition testimony from Mr. Spota and Mr. Heilig in their moving papers:

> Q Did you know whether it was considered whether Ms. Thompson would be given the opportunity to resign?
> A Yes.
> Q What was the decision made about that?
> A Not to give her the opportunity to resign.
> Q Why not?
> A It was -- ***it was my advice to Mr. Spota that we end the policy where we give employees the choice to resign and/or be terminated if a decision was made that a termination was in order***.
> Q Why was that your advice?
> A Because I believe that if the decision is made to terminate somebody they should be terminated, they should not be given the choice to resign and make it

look like they resigned on their own volition when it was a performance or other related issue that required termination.
* * *
Q Why?
A Because I just don't believe in the resignation or termination policy. I don't believe you are not giving -- you are giving them a choice but you are not giving them a choice. You are terminating them one way or the other. You are terminating them by allowing them to resign. If they refuse to resign, you are going to terminate them. I think that choice should be the district attorney's choice not the employee's choice.
Q *Has anyone been permitted to resign since Ms. Thompson's termination*?
A *Under those circumstances, no*.
Q Under any circumstances.
A Sure. People have resigned.
Q Resigned voluntarily?
A Yes.

(Donnelly Decl., Heilig Tr. at 126:20-127:14, 128:21-129:14) [Dkt No. 78-3 at Page ID # 563]

Additionally, Mr. Spota testified:

Q Okay. Now, did you consider alternatives other than terminating Ms. Thompson?
A Under the circumstances as they occurred, no.
Q Did you consider offering her the option to resign?
A No. *That was our policy in effect at the time. And there was no reason why I [] would vary from it*.

(Donnelly Decl., Spota Tr. at 82:17-25) [Dkt No. 78-5 at Page ID # 592]

Plaintiff herself submitted evidence of the policy change in her Opposition papers:

Q Was ADA 1[1] permitted to resign in lieu of termination?
A He was.
Q Why was he allowed to do that?
A That was Mr. Kearon was the person who was the administrative Division Chief, and that was his policy at the time, that whenever an ADA was going to be let go they would be given the opportunity to resign. *That policy was changed when Mr. Heilig became the Division Chief.*

(Solotaroff Decl., Constant Tr. at 31:12-21) [Dkt No. 88-2 at Page ID # 1078]

---

[1] In light of the Court's ruling on Individual Defendants' Motion to Seal Exhibits 16 and 22 of the Solotaroff Declaration [Dkt No. 108], Individual Defendants will use the same identification as in the R & R to this individual as ADA 1. [Dkt No. 115 at 51, fn. 52]

The Court should have considered the Individual Defendants' evidence concerning the change in disciplinary policy at the DA's Office after Mr. Heilig became Division Chief. This evidence "might reasonably be expected to alter the conclusion reached by the court," that the five ADAs identified by Plaintiff were similarly situated and that they were treated better. *Shrader*, 70 F.3d at 257. The Court's failure to do so was clear error.

C. **THE COURT MISAPPLIED THE LAW TO FIND THAT THE FIVE ADAS IDENTIFIED BY PLAINTIFF WERE SIMILARLY SITUATED**

In addition, the Court's finding that the five ADAs identified in Plaintiff's Opposition papers were similarly situated and treated better than Plaintiff constituted clear error. To be "similarly situated," Plaintiff must show that her alleged comparators are similarly situated in "all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). A comparator "must have engaged in conduct similar to Plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Desir v. Board of Coop. Educ. Servs. (BOCES) Nassau Cty.*, 803 F.Supp.2d 168, 180 (E.D.N.Y. 2011). Moreover, **a comparator must be subject to the same performance evaluation and discipline standards**. *Placide-Eugene v. Visiting Nurse Serv. of New York*, 86 F.Supp.3d 132, 146-48 (E.D.N.Y. 2015). The Court committed clear error by misapplying this standard.

In *Barbera v. Pearson Education, Inc.*, 2018 WL 4939772, -- F.3d – (7th Cir. Oct. 12, 2018), a case with facts similar to this action, the Court specially held that a comparator must be subject to the same performance evaluation and discipline standards. In *Barbera*, the plaintiff sued her former employer for discrimination, claiming she did not get the same chance to resign with severance pay that three men received. *Id*. at * 1. The magistrate judge granted the employer's motion for summary judgment, finding that the proposed comparators were not similarly situated because they sought resignation with severance pay before circumstances materially changed, while

8

the plaintiff sought severance pay <u>after the circumstances changed</u>, and the Seventh Circuit affirmed. *Ibid*. In *Barbera,* the employer, Pearson, had a Severance Policy that stated that only employees who were involuntarily terminated without cause were eligible for severance pay. *Id*. at * 1. In addition, an employee who was terminated as a result of a sale, merger "or any other transaction" when the employee was offered employment by the purchaser or another company was not eligible for severance pay. *Ibid*. In 2013 and 2014, Pearson was engaged in a reduction of its workforce and carved out an exception to its Severance Policy. Specifically, Pearson offered severance pay to employees who left voluntarily during a period of time specified by Pearson. *Ibid*. Three men employed by Pearson elected to leave Pearson in August 2014, March 2015 and April 2015, which was outside the acceptance window, but during a period of time Pearson was seeking to further reduce the workforce. *Id*. at * 1-2. The three male employees received severance pay of 34 weeks, 26 weeks, and 38 weeks, respectively. I*d.* at * 2. Thereafter, Pearson decided to transfer its warehouses and print services to another entity, Donnelley, and gave Donnelley a list of employees that would stay on the job but transfer their employment to Donnelley. *Id.* at * 2. The plaintiff was one of the employees whose employment was to be transferred to Donnelley. *Ibid*. Thereafter, the plaintiff made her request for voluntary separation with severance pay, and was told she was ineligible under Pearson's Severance Policy. *Id.* at * 4. The Court of Appeals found that the "timing distinction means the proposed comparators are not similarly situated," and that "Pearson's impending transaction with the promise of continued employment to individuals such as [plaintiff] is a differentiating circumstance between her and the proposed comparators." *Id*. at * 6.

      Similarly here, the five former ADAs whom Plaintiff identified in her Opposition papers, ADAs Meg Farrell, ADA 1, Ronald Lippits, Michael Blakely and Glenn Kurtzrock, who allegedly engaged in similar conduct but were given the opportunity to resign in lieu of

9

termination, were not similarly situated. [Dkt No. 92 at 20-21]. In response to Plaintiff's argument, Defendants presented evidence that ADAs Farrell, ADA 1, and Lippits were not proper comparators because they were not subjected to the same policies and procedures as Plaintiff. Rather, their performance issues occurred **during a different time period**, well before the termination of Plaintiff's employment (some in 2003 and 2007), when the DA's policy under the prior Division Chief Kearon was to permit employees to resign in lieu of termination. The policy changed in 2010, when Mr. Heilig became Division Chief, well before the decision was made to terminate Plaintiff's employment. Individual Defendants submitted a reply affidavit from Division Chief Heilig, clarifying that ADA Farrell, ADA 1, and ADA Lippits were allowed to resign under the former policy, which Division Chief Heilig ended when he became Division Chief in 2010. (Heilig Reply Aff. at ¶ 3) [Dkt No. 96] Mr. Spota simply followed the new policy implemented by Division Chief Heilig. (Donnelly Decl., Spota Tr. at 82:17-25) [Dkt No. 78-5 at Page ID #592] ADA Farrell, ADA 1, and ADA Lippits were not similarly situated to Plaintiff.

As for ADA Blakey and ADA Kurtzrock, Defendants provided evidence in response to Plaintiff's misstatement of fact. They were not given the option of resigning in lieu of termination. Rather, the DA's Office decided to terminate their employment, and they resigned before the terminations could be effectuated. (Heilig Reply Aff. at ¶ 4; Constant Reply Aff. at ¶ 3) [Dkt Nos. 96, 97] ADA Blakey and ADA Kurtzrock were not treated better than Plaintiff. Although Plaintiff also asserts that "at least nine other ADAs in Narcotics consistently arrived at work after 9:00 a.m.," [Dkt No. 92 at 6-7], Plaintiff provided no admissible evidence for her assertion, citing only to the inadmissible hearsay statements of Laura Thurber, Plaintiff's counsel's legal assistant. (See Pl's Statement of Additional Material Facts ("CADMF") 45-48) [Dkt No. 91]. Accordingly, these additional ADAs identified in Plaintiff's Opposition are not proper comparators.

Moreover, the Court's misapplication of the similarly situated standard is a matter that "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257. In fact, without any evidence that other ADAs outside her protected group were treated better than Plaintiff, Plaintiff cannot meet her initial burden of making a *prima facie* case of discrimination, nor can she refute Defendants' legitimate non-discriminatory justification for terminating her employment. The Court's Order adopting Magistrate Judge Tomlinson's finding that these five ADAs were similarly situated, was clear error.

## D. THE COURT MISAPPLIED THE LAW TO FIND EVIDENCE OF DISCRIMINATORY INTENT

The Court also misapplied the *McDonnell Douglas* burden shifting analysis to find that there was sufficient evidentiary basis to conclude that Mr. Spota's legitimate reason for terminating Plaintiff was false. In order to defeat summary judgment, Plaintiff must submit evidence that demonstrates to the Court that a discriminatory reason more likely motivated Mr. Spota's decision to terminate Plaintiff's employment, or show that Mr. Spota's proffered explanation is unworthy of credence. *Female Port Auth. Officer 47708 v. Port. Auth. of New York & New Jersey*, No. 15-CV-6359, 2018 WL 3489569 at * 10 (E.D.N.Y. July 19, 2018) (*citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To determine pretext, Courts look to a number of factors, including: (1) the strength of the plaintiff's *prima facie* case; (2) the probative value of the proof that employer's explanation is false; and (3) "any other evidence that supports the employer's case and that properly may be considered." *Id.* at 148-49. There was no legally sufficient evidentiary basis to conclude that Mr. Spota's legitimate reason for terminating Plaintiff was false, and it was clear error for the Court to find pretext.

First, as Magistrate Judge Tomlinson recognized, Plaintiff's *prima facie* discrimination claim "is not strong." [Dkt No. 115 at 47]. Indeed, Magistrate Judge Tomlinson found that

Plaintiff only met her *de minimus* prima facie burden as to an inference of discrimination, because of evidence that other ADAs arrived to work late, regardless of the reason. [Dkt No. 115 at 44]. However, the only evidence Plaintiff submitted that the stated reason for her termination was false, was misleading testimony that some former ADAs with performance issues were given the option of resigning rather than having their employment terminated. [Dkt No. 115 at 52-53]. As set forth above, there is no probative value to Plaintiff's "evidence" since those individuals were subject to a different disciplinary policy, which was abolished years before Plaintiff's employment was terminated. Instead, the evidence supports the conclusion that Plaintiff was terminated for legitimate, nondiscriminatory reasons. The Court also erred in failing to give proper weight to Defendants' legitimate justification for terminating Plaintiff's employment. Moreover, there is a complete absence of any direct evidence of discriminatory intent. [Dkt No. 115 at 47]. Mr. Spota is the same actor who not only hired Plaintiff after attending a function for the Amistad Black Bar Association, but he also promoted Plaintiff to the Narcotics Bureau in 2009, and then promoted her to the position of Senior ADA, and terminated her employment in 2013. [Dkt No. 115 at 48; Dkt No. 91 (Pl's Resp. to UMF 12-14, 19, 22, 31, 99)]. Plaintiff received the benefit of progressive discipline through various verbal and written warnings concerning her chronic lateness. [Dkt Nos. 50 and fn. 51; Dkt No. 91 (Pl's Resp. to UMF 45-46, 48, 49, 77)]. Plaintiff admits the underlying facts for the reason for her termination, that she was chronically late for work without permission or notification to her supervisor, and refusal to change her behavior even after receiving written warnings and counseling. [Dkt No. 91 (Pl's Resp. to UMF 47, 50, 51, 67, 68, 77, 80, 83)]. There is simply no evidence that Plaintiff's termination was discriminatory.

Finally, even if a reasonable jury could find that Mr. Spota's non-discriminatory reason was false, Plaintiff had not provided sufficient evidence to support a finding that the true reason for her termination was racially motivated. In fact, no evidence has been offered to indicate that the true reason was Plaintiff's race. *See Female Port Auth. Officer 47708 v. Port Auth. of New York & New Jersey,* No. 15-CV-6359 (NGG), 2018 WL 3489569, at *11 (E.D.N.Y. July 19, 2018). S*ee also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001) ("[E]ven assuming a jury [could disbelieve defendant's reason for firing plaintiff,] the evidence presented by [plaintiff] is not enough to permit a jury to find that the real reason he was fired was his age"). In short, there is no evidence in the record to support a finding of pretext against Mr. Spota, and the Court's Order finding pretext was clear error.

## **CONCLUSION**

For the foregoing reasons, Individual Defendant Spota respectfully requests that the Court grant the motion for reconsideration and modify its September 30, 2018 Order to grant summary judgment on Plaintiff's race discrimination claim as to Mr. Spota.

Dated: New York, New York  
October 15, 2018

Respectfully submitted,

PUTNEY, TWOMBLY, HALL & HIRSON LLP

By  /s/   RKK  
Mary Ellen Donnelly  
Rebecca K. Kimura  
521 Fifth Avenue  
New York, New York 10175  
(212) 682-0020

*Attorneys for Defendants Thomas J. Spota and Robert Ewald*