UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

AVEMARIA THOMPSON,

Plaintiff,

-against-

THOMAS J. SPOTA and SUFFOLK COUNTY,

Defendants.

-------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-2473 (NGG) (AKT)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff AveMaria Thompson, a former Assistant District Attorney ("ADA") with the

Suffolk County District Attorney's Office (the "DA's Office"), brings this action against Suffolk

County (the "County") and her former supervisors, Thomas J. Spota and Robert Ewald

(collectively, the "Individual Defendants"), alleging that Defendants discriminated against her on

the basis of her race and retaliated against her for engaging in protected activity based upon her

race, in violation of Title VII and 42 U.S.C. § 1983. (See Am. Compl. (Dkt. 46).) Plaintiff

asserts causes of action for (1) race discrimination pursuant to 42 U.S.C. § 1983 (against the

Individual Defendants) (2) retaliation pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981

(against the Individual Defendants); (3) racial discrimination and hostile work environment in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (against the County); and (4)

retaliation in violation of Title VII (against the County). (See id.)

The Individual Defendants and the County both filed motions for summary judgment on

November 17, 2017. (See Individual Defs. Not. of Mot. for Summ. J. (Dkt. 77); County Not. of

Mot. for Summ. J. (Dkt. 85).) The motions were denied in part and granted in part as follows:

(1) all of Plaintiff's claims against Ewald were dismissed in their entirety; (2) Plaintiff's

retaliation and hostile work environment claims against all Defendants were dismissed in their

entirety; (3) Plaintiff's § 1983 race discrimination claims against Spota and the County survived; and (4) Plaintiff's Title VII race discrimination claim against the County survived. (See Sept. 30, 2018 Order (Dkt. 125) at 3-4.) Before the court is Spota's motion for reconsideration of that decision regarding Plaintiff's race discrimination claim against him. (See Mem. in Support of Mot. for Recons. ("Mem.") (Dkt. 127) at 2.)

For the following reasons, Plaintiff's motion for reconsideration is DENIED.

## I.      BACKGROUND[1]

Plaintiff filed her complaint on April 17, 2014. (Compl. (Dkt. 1).) The case was originally assigned to United States District Judge Arthur D. Spatt, and was reassigned to United States District Judge Joan M. Azrack on February 7, 2015. (See Feb. 7, 2015 Recusal Order (Dkt. 40).) With the court's permission, Plaintiff filed an amended complaint on July 24, 2015 (Am. Compl.), and Defendants answered the amended complaint on October 30, 2015. (Answer (Dkt. 54).) On November 17, 2017, following the close of discovery, Defendants filed two motions for summary judgment. (See Notice of Individual Defs. Mot. for Summ. J. (Dkt. 77); Notice of the County's Mot. for Summ. J. (Dkt. 85).) On May 11, 2018, Judge Azrack referred those motions to Magistrate Judge Tomlinson for a Report and Recommendation ("R&R"). (See May 11, 2018 Order Referring Mots.) On August 23, 2018, Judge Tomlinson issued an R&R recommending that Defendants' motions for summary judgment be GRANTED in part and DENIED in part as follows: (1) all claims against Ewald were dismissed in their entirety; (2) Plaintiff's retaliation and hostile work environment claims against all Defendants were dismissed in their entirety; (3) Plaintiff's § 1983 race discrimination claims against Spota and the County survived; and (4) Plaintiff's Title VII race discrimination claim against the County survived.

_____

[1] The court assumes the parties' familiarity with the underlying facts and factual disputes, and discuss facts only as necessary to resolve the instant motion.

(R&R.) Following objections from both Plaintiff and Defendants, Judge Azrack reviewed the

motion de novo and adopted the R&R in full. (See Sept. 30, 2018 Order at 3.)

Spota filed the instant motion for reconsideration on October 15, 2018. (Mem.; Notice of

Mot. for Recons. (Dkt. 126).) Plaintiff filed her response on October 29, 2018 (Mem. in Opp'n

to Mot. for Recons. ("Opp'n") (Dkt. 129)), and Spota replied on November 5, 2018 (Reply in

Supp. of Mot. for Recons. ("Reply") (Dkt. 130)). The case was reassigned to the undersigned on

March 25, 2019. (Mar. 25, 2019 Reassignment Notice.)

## II.    LEGAL STANDARD

The standard for a motion for reconsideration is "strict, and reconsideration will generally

be denied unless the moving party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "Such

motions may be granted: (1) if the court overlooked critical facts; (2) if it overlooked controlling

decisions that could have changed its decision; (3) in light of an intervening change in

controlling law; (4) in light of new evidence; (5) to correct clear error; or (6) to prevent manifest

injustice." Monaco v. Hogan, 98-CV-3386 (NGG), 2016 WL 3212082, at *2 (E.D.N.Y. June 8,

2016) (internal citations and quotation marks omitted); see also Rollins v. N.Y. State Div. of

Parole, No. 03-CV-5952 (NGG), 2007 WL 539158, at *2 (E.D.N.Y. Feb. 16, 2007) ("A motion

for reconsideration may be granted only if a court overlooked (1) factual matters that were put

before it on the underlying motion or (2) controlling legal authority." (citation omitted)). "A

motion for reconsideration is not an opportunity to relitigate claims that have already been

adjudicated." Williams v. Cty. of Nassau, 779 F. Supp. 2d 276, 279 (E.D.N.Y. 2011) (citing

Sequa Corp. v. GBJ Corp., 156 F. 3d 136, 144 (2d Cir. 1998); Davidson v. Scully, 172 F. Supp.

3

2d 458, 461-62 (S.D.N.Y. 2001)). In any event, "[i]t is within the sound discretion of the district court whether or not to grant a motion for reconsideration." Markel Am. Ins. Co. v. Linhart, No. 11-CV-5094 (SJF), 2012 WL 5879107, at *2 (E.D.N.Y. Nov. 16, 2012).

## III. DISCUSSION

Spota only seeks reconsideration of the portion of Judge Azrak's decision that allowed Plaintiff's § 1983 race discrimination claims against him to go forward. (Mem. at 2.) Spota raises three arguments in support of his motion: (1) that Judge Azrak overlooked evidence of a change in disciplinary policy instituted years before Plaintiff was terminated (Mem. at 4-8); (2) that Judge Azrak misapplied the law to find that employees identified by Plaintiff were similarly situated (Mem. at 8-11); and (3) that Judge Azrack misapplied the law to find evidence of discriminatory intent (Mem. at 11-13).

As an initial matter, the court notes that Spota previously raised all three of his arguments in his objections to Judge Tomlinson's R&R (see Spota Obj. to R&R ("Obj.") (Dkt. 117)), and Judge Azrack rejected all three (see Sept. 30, 2018 Order at 3). As such, his motion for reconsideration is merely an attempt to "relitigate claims that have already been adjudicated," and can be denied on that ground alone. See Williams v. Cty. of Nassau, 779 F. Supp. 2d 276, 279 (E.D.N.Y. 2011) (citing Sequa Corp., 156 F. 3d at 144; Davidson, 172 F. Supp. 2d at 461-62 (S.D.N.Y. 2001)).

The court will nonetheless address the merits of Spota's claims.

### A. Evidence of a Change in Disciplinary Policy

First, Spota argues that Judge Azrack overlooked evidence of a disciplinary policy in determining that five white[2] ADAs who were allowed to resign rather than being terminated

---

[2] Plaintiff is African-American. (Am. Compl. ¶ 1.)

were similarly situated to Plaintiff. (Mem. at 4.) Spota insists that the Individual Defendants "submitted credible, admissible evidence that those ADAs were subjected to a different disciplinary standard applied by a former Division Chief during a different time period, and that thereafter, there was a change in disciplinary policy instituted . . . years before Plaintiff's employment was terminated." (Id.) According to Defendant, this evidence "negat[es] any suggestion" that Plaintiff was subjected to different disciplinary standards than similarly situated ADAs of a different race. However, in her R&R, Judge Tomlinson declined to consider this evidence because the Individual Defendants submitted it for the first time with their reply brief. (R&R at 54.) Spota objected to this determination in front of Judge Azrack (see Spota Obj. to R&R ("Obj.") (Dkt. 117) at 10-13), and Judge Azrack rejected his argument, agreeing with Judge Tomlinson that the evidence was not properly submitted. (Sept. 30, 2018 Order at 3.)

This court agrees with both Judge Azrack and Judge Tomlinson. The Individual Defendants submitted evidence of the change in policy with their Reply papers, not with their initial filing in support of their motion for summary judgment. (R&R at 54; Mem. at 4.) Spota argues that Judge Tomlinson erred in refusing to consider this evidence because "it did not constitute 'new evidence' or new reasons to support the entry of summary judgment, but instead directly responded to factual assertions made by Plaintiff in her Opposition papers." (Mem. at 5 (citing Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000); Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993), aff'd, 41 F.3d 1510 (7th Cir. 1994)).)

Spota is correct that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." Guadagni v. N.Y.C. Transit Auth., 387 F. App'x 124, 125-26 (2d Cir. 2010) (summary order) (quoting

Bayway Ref. Co., 215 F.3d at 226-27). However, "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." Monaghan v. Airlines, 16-CV-3528 (ERK), 2018 WL 3682482, at *5 (E.D.N.Y. Aug. 2, 2018) (quoting Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)). And while "[a] court has discretion to consider documents filed in violation of procedural rules," Revise Clothing, 687 F. Supp. 2d at 387 (citations omitted), it is not required to do so.

Here, as Judge Tomlinson observed, the Individual Defendants stated "in their moving papers that there was no evidence of similarly situated comparators who were treated better than Plaintiff." (R&R at 5; see Individual Defs. Mem. in Supp. of Mot. for Summ. J. ("Individual Defs. Summ. J. Mot.") (Dkt. 84) at 14.) It is true that the Individual Defendants' memorandum in support of their motion for summary judgment did not specifically discuss the other ADAs who allegedly were permitted to resign instead of being terminated. However, Plaintiff's amended complaint clearly alleges that "it is the custom of the Suffolk County DA that white ADAs who engage in far more serious behavior . . . are not terminated and, at most, are demoted or asked to resign." (Am. Compl. ¶ 29.) Thus, the issue of whether Plaintiff is similarly situated to those ADAs is hardly a "new material issue[]," Guadagni, 387 F. App'x at 125 (quoting Bayway Ref. Co., 215 F.3d at 226-27); rather, it is a fundamental factual question that has long been a part of the case, and one that the Individual Defendants directly acknowledged in their motion. (See Individual Defs. Summ. J. Mot. at 14.) Further, Spota does not contest that the information was available to the Individual Defendants at the time they filed their motion, nor that proving that no contested issue of material fact existed as to disparate treatment of similarly situated employees of different races was "necessary in order for [them] to meet [their] burden"

6

on their motion for summary judgment. See Monaghan, 2018 WL 3682482, at *5 (quoting

Revise Clothing, 687 F. Supp. 2d at 387).

Judge Tomlinson did not, therefore, "overlook" any facts submitted by the Individual

Defendants as would warrant reconsideration. See Rollins, 2007 WL 539158, at *2. Rather, she

appropriately declined to consider evidence improperly submitted on reply. Reconsideration is

not appropriate on this issue.

## B. The Law Regarding Similarly Situated Employees

Second, Spota argues that Judge Tomlinson misapplied the law in determining that the

five white ADAs Plaintiff identified were similarly situated to Plaintiff. (See Mem. at 8-11.)

However, this argument turns on the evidence submitted for the first time in the Individual

Defendants' reply brief. (See id. at 9.) As discussed above, Judge Tomlinson appropriately

declined to consider such evidence in her R&R. And, leaving that evidence aside, Spota does

not provide any "controlling decisions or data that the court overlooked," Shrader, 70 F.3d at

257. The court therefore rejects this claim as well.

## C. Evidence of Discriminatory Intent

Finally, Spota argues that Judge Tomlinson "misapplied the McDonnell Douglas burden

shifting analysis to find that there was sufficient evidentiary basis to conclude that Mr. Spota's

legitimate reason for terminating Plaintiff was false." (Id. at 11.) Under the McDonnell Douglas

framework, a plaintiff must first establish a prima facie case of employment discrimination. See

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). "Generally speaking, a

plaintiff's burden of establishing a prima facie case in the context of employment discrimination

law is minimal." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (citation and

quotation marks omitted). If the plaintiff can establish a prima facie case of discrimination,

"such a showing will raise a temporary 'presumption' of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015) (citing, inter alia, Burdine, 450 U.S. at 253-54). The employer satisfies this burden if it can proffer a "legitimate, nondiscriminatory" reason for the adverse action. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citing McDonnell Douglas, 411 U.S. at 802). "Plaintiff must then be afforded the opportunity to prove by a preponderance of the evidence that the defendant's proffered, nondiscriminatory reason was not its true reason for the employment decision, and that . . . discrimination was defendant's real motivation." Dais v. Lane Bryant, Inc., No. 97-CV-2011, 2001 WL 1328390, at *2 (S.D.N.Y. Oct. 29, 2001) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

Contrary to Spota's assertions, Judge Tomlinson did not misapply this standard. First, Judge Tomlinson determined that Plaintiff had "proffered facts sufficient to meet her de minimis prima facie burden as to an inference of discrimination." (R&R at 44.) Specifically, Judge Tomlinson relied on Plaintiff's evidence that "there were other ADAs in her bureau who were outside her protected class and arrived late, were generally subject to the same workplace standards regarding attendance, and were not terminated." (Id.) This court agrees that such evidence meets the "minimal" level required to establish a prima facie case of discrimination. See Collins, 305 F.3d at 118. Next, Judge Tomlinson correctly noted that Plaintiff's "history of . . . repeatedly arriving to work late" is sufficient evidence to provide a "legitimate, nondiscriminatory reason for Plaintiff's termination." (R&R at 45-46.) Finally, disregarding the evidence improperly submitted on reply, Judge Tomlinson concluded that "there are sufficient

facts from which Plaintiff could convince a reasonable jury that the Defendants' true motivation for her termination was discriminatory." (Id. at 47.) In so holding, she relied on evidence indicating that similarly situated ADAs of a different race were treated differently from Plaintiff. (Id.)

Again, Spota argues that this conclusion was incorrect in light of the evidence submitted with the Individual Defendants' reply brief. And, once again, the court holds that Judge Tomlinson appropriately declined to consider that evidence. As Spota does not provide any other arguments illustrating "controlling decisions or data that the court overlooked," Schrader, 70 F.3d at 257, the court rejects this claim as well.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's (Dkt. 126) motion for reconsideration is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
June 24, 2019

NICHOLAS G. GARAUFIS
United States District Judge