UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AveMaria Thompson,

Plaintiff,

-against-

Thomas J. Spota, Robert Ewald, and Suffolk County,

Defendants.

**MEMORANDUM & ORDER**

**14-CV-02473 (NGG) (AYS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff AveMaria Thompson brings this employment discrimination action against her former employer, Suffolk County, and the former District Attorney ("DA"), Thomas J. Spota. Jury selection is scheduled to begin in this case on April 10, 2023. Pending before the court are the parties' motions *in limine*. (*See* Pls.' Mot. *in Limine* (Dkt. 151) ("Pls.' MIL"); Defs.' Mot. *in Limine* (Dkt. 153) ("Defs.' MIL"); *see also* Pls.' Opp. to Defs.' Mot. *in Limine* (Dkt. 159) ("Pls.' Opp."); Defs.' Opp. to Pls.' Mot. *in Limine* (Dkt. 158) ("Defs.' Opp."); Pls.' Reply (Dkt. 162); Defs.' Reply (Dkt. 163).)

For the reasons set forth below, Plaintiff's MIL is GRANTED IN PART and DENIED IN PART, and Defendants' MIL is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural history in this matter and thus will summarize only those facts relevant to the instant motions.

Thompson began working at the Suffolk County District Attorney's Office as an Assistant District Attorney ("ADA") on August 4, 2003. (R&R on Summ. J. (Dkt. 115), *adopted by* Sept. 30, 2018 Order (Dkt. 125) at 3.) She moved from the Case Advisory Bureau to the Narcotics Bureau in October 2009. (*Id.* at 7.) Thompson alleges that she was discriminated against while working in the Narcotics Bureau. (Am.

1

Compl. (Dkt. 46.) ¶ 3.) This discrimination included being subjected to co-worker's harassing and racist statements. (R&R on Summ. J. at 11-13.) Thompson was also repeatedly disciplined by her superiors for chronic lateness during this period. (*Id.* at 14-19.) Thompson's employment was terminated by DA Spota on May 29, 2013, with the stated reason being her habitual lateness. (*Id.* at 22-23.) Upon notification of her termination, Thompson told her superiors that she believed she was being fired on account of her race. (*Id.* at 23.)

Thompson filed a Complaint in this action alleging racial discrimination on April 17, 2014, naming Spota, Robert Ewald, and Kathleen Wagner as Defendants. (*See generally* Compl. (Dkt. 1).) She filed an Amended Complaint on July 24, 2015 dismissing Kathleen Wagner as a Defendant but adding Suffolk County. (Am. Compl. ¶ 1.) The Amended Complaint contained claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. (*Id.* ¶¶ 31-38.)

Following the court's adoption of the Magistrate Judge's Report and Recommendation on Summary Judgment, the following claims remain at issue: (1) Thompson's race discrimination claim against Spota and Suffolk County pursuant to § 1983; and (2) Thompson's race discrimination claim against Suffolk County under Title VII. (Sept. 30, 2018 Order at 3-4.)

## II.   LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[1] "A court will exclude evidence on a motion *in limine* only if it is clearly inadmissible on all potential

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-CV-858 (NGG) (PK), 2019 WL 1365752, at *2 (E.D.N.Y. Mar. 26, 2019). At trial, the court may also exercise discretion "to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## III. DISCUSSION

### A. Plaintiffs' Motions *in Limine*

#### 1. Plaintiff's MIL # 1: Evidence Related to the Reasons for Thompson's Termination

Thompson first asks the court to exclude evidence on and reference to topics related to her termination, arguing that they are irrelevant under Federal Rules of Evidence ("Rules") 401 and 402, or improperly prejudicial under Rule 403. (Pls.' MIL at 3-6.) These topics include Thompson's knowledge of criminal law, interpersonal relationships with co-workers, absence from work and vacation requests, failure to complete time sheets, provision of financial disclosure forms and expiration of her driver's license, and a prior lawsuit from over twenty years ago. (*Id.* at 2-3.)

Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence." Fed. R. Evid. 401. The Second Circuit has described this as a "very low standard." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). All relevant evidence is admissible, unless otherwise provided by federal statute, the Federal Rules of Evidence, or the Constitution. Fed. R. Evid. 402. Courts can, however, exclude relevant evidence where the probative value of the evidence "is *substantially outweighed* by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403

(emphasis added). "'Unfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403. District courts have broad discretion in conducting a Rule 403 balancing test. *See United States v. Bermudez*, 529 F.3d 158, 161-62 (2d Cir. 2008).

Employment discrimination suits under § 1983 and Title VII are governed by the burden-shifting framework set out in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). A plaintiff must first make out a *prima facie* case for discrimination, which entails showing (1) they are a member of a protected class; (2) they are qualified for employment in the position; (3) they suffered an adverse employment action; and (4) the adverse employment action occurred in a context giving rise to an inference that the employer acted with discriminatory motivation. *Id.* at 307. The burden then shifts to the employer to provide a nondiscriminatory reason for the adverse employment action, *id.*, upon which it finally shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was a pretext for intentional discrimination. *Id.* at 307-08.

The Defendants have stated that, at trial, they will seek to show Thompson was terminated due to her lateness, insubordination, and unwillingness to change behavior, rather than racial discrimination. (Joint Pretrial Order ("JPTO") (Dkt. 138) at 2; Defs.' Opp. at 4.) Evidence tending to make these proffered nondiscriminatory reasons more or less likely is relevant to the second step of the *McDonnel Douglass* framework under Rule 401.

      a.    Thompson's Knowledge of Criminal Law

Thompson first seeks to exclude evidence or arguments related to her knowledge of the criminal law. (Pls.' MIL at 2.) She points to deposition testimony where Defense counsel questioned her on various principles of criminal law as the type of evidence that should be barred. (*See* Ex. B to Robinson Decl. (Dkt. 152-2).) Spota and Suffolk

County assert that Thompson's knowledge of criminal law is relevant to her qualification as an ADA. (Defs.' Opp. at 5.)

The court finds that the Defense is not permitted to use the questions from Thompson's deposition testimony as evidence about her knowledge of the criminal law. The testimony that Defendants seek to introduce lacks probative value. The fact of Thompson's hiring as an ADA, her yearly performance reviews, and her promotion to Senior ADA show her qualification for the job. (Pls.' 56.1 St.  (Dkt. 91) ¶¶ 14, 31, 58.) An impromptu quiz on criminal law during a deposition more than a decade after her hiring, however, has little bearing on this topic. It is not contemporaneous with the period in question and its effectiveness in assessing knowledge of criminal law is doubtful at best. Introducing this evidence also risks confusing the jury or creating a mini trial over Thompson's knowledge of the criminal law.

This testimony thus cannot be used as evidence of Thompson's knowledge of the criminal law under Rules 401, 402, and 403.

  b.  Thompson's Interpersonal Relationships with Colleagues at the Suffolk County DA's Office

Thompson also asks the court to bar evidence of her interpersonal relationships with colleagues at the Suffolk County DA's Office. (Pls'. MIL at 2.) The Defendants contend that such evidence is relevant to Thompson's job performance and the non-discriminatory reason for which she was terminated. (Defs.' Opp. at 5.)

The Defendants' stated explanation for Thompson's termination at the time of her firing and at summary judgment was her perpetual lateness in arriving at work. (Defs.' 56.1 St. (Dkt. 83) ¶ 102; Defs.' Mot. Summ. J. (Dkt. 85) at 16; R&R on Summ. J. at 45-46.) They now indicate that at trial they will try to prove Thompson's termination was due in part to "her insubordination and unwillingness to change behavior despite repeated counseling from her supervisors." (JPTO at 2.) This represents an additional nondiscriminatory reason for her termination. Defendants in Title VII suits are allowed to present multiple

nondiscriminatory reasons for the plaintiff's termination, though the factfinder may view shifting explanations as evidence of pretext. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846-47 (2d Cir. 2013); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 30 (E.D.N.Y. 2015). It is not the court's role to bar a Defendants' additional nondiscriminatory explanation, but rather it is up to the factfinder to determine whether this reason is persuasive.

Accordingly, evidence of Thompson's interpersonal relationships is relevant under Rule 401, as it pertains directly to her "insubordination and unwillingness to change behavior." Though this evidence may cast Thompson in a negative light, it is not sufficiently prejudicial to be excluded under Rule 403. The Court therefore declines to bar this evidence.

### c. Thompson's Absence from Work and Vacation Requests

Thompson further seeks exclusion of evidence of her absence from work and vacation requests. (Pls.' MIL at 2.) Thompson's absence from work is one of the principal nondiscriminatory reasons that the Defendants have proffered for her termination. (JPTO at 2; Defs.' Opp. at 4.) Evidence on this topic is thus clearly relevant under Rule 401 and, given its high probative value, not subject to exclusion under Rule 403. Barring evidence on this topic would substantially impair the Defendants' ability to make out a nondiscriminatory reason. It is not the court's role to prevent the Defendants from proffering such a reason; rather, it is the Plaintiff's responsibility to show that the Defendants failed to show such a reason or that the one they put forth is a pretext for intentional discrimination.

The court will not exclude evidence of Thompson's work and vacation requests.

       d.     Thompson's Time Sheets

Thompson also asks the court to exclude her time sheets. (Pls.' MIL at 2.) Again, timeliness is one of the Defendants' primary explanations for Thompson's termination. (JPTO at 2; Defs.' Opp. at 4.) To the extent that time sheets will be used to show that Thompson failed to arrive at work on time, or that she improperly recorded her time, they are relevant to the issue of her timeliness. For reasons articulated *supra*, the court refuses to bar evidence of Thompson's time sheets.

       e.     Thompson's Financial Disclosure Form and Driver's License Expiration

Next, Thompson seeks to disallow evidence of her financial disclosure forms and the expiration of her driver's license. (Pls.' MIL at 3.) The Defense contends that Thompson's failure to file her financial disclosure form on time is pertinent to the question of her timeliness. (Defs.' Opp. at 4.)

Thompson's delay in filing her financial disclosure forms can be broadly construed as part of her larger timeliness problems at work. This incident was contemporaneous with her repeated disciplining for arriving late to work and may have contributed to a broader perception of lateness. (R&R on Summ. J. at 14-15.) Thompson has also failed to show why any prejudice resulting from introduction of this evidence would be unfair. The court therefore finds evidence on Thompson's financial disclosure forms to be relevant under Rule 401 and not overly prejudicial under Rule 403.

Yet, evidence on Thompson's expired driver's license is not relevant. The renewal of a driver's license is a personal matter that does not bear on qualifications for a job or satisfactory performance in that role. It is therefore not relevant under Rule 401. The expired driver's license may also be a form of impermissible character evidence if used to establish Thompson's propensity for lateness. Under Rule 404(b)(1), prior specific acts cannot be offered to show that a party possesses a certain character trait and that they acted in accordance with that trait

during the period at issue. Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Introducing Thompson's expired driver's license to establish her character for lateness would run afoul of Rule 404(b)(1).

The court therefore excludes evidence on Thompson's expired driver's license given its lack of relevance and potential to be used as a form of improper character evidence.

### f.      Thompson's Prior Lawsuit

Finally, Thompson seeks to bar evidence of her 2001 lawsuit related to a shark attack of her husband. (Pls.' MIL at 3; Ex. J to Decl. of Amy E. Robinson (Dkt. 152-10) at 1.) The facts and circumstances of the prior lawsuit do not relate to the claims in this matter. Accordingly, the suit is not relevant under Rule 401.

Moreover, to the extent that the prior suit would be introduced to characterize Thompson as a "chronic litigant"—i.e. for propensity purposes—it is subject to exclusion under Rule 404(b)(1). *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 542 (E.D.N.Y. 2011) (citing *Outley v. City of New York*, 837 F.2d 587, 591-93 (2d Cir. 1988)). Prior lawsuits may be admissible if used for one of the proper purposes listed in Rule 404(b), *see Williams v. Geraci*, No. 14-CV-5742 (SIL), 2020 WL 5848738, at *11 (E.D.N.Y. Sept. 30, 2020), yet the Defendants have given no indication that they would use Thompson's 2001 lawsuit for any such purpose. The court therefore disallows evidence of this prior suit.

For these reasons's Plaintiff's first MIL is GRANTED IN PART and DENIED in part.

### 2.    Plaintiff's MIL # 2: Thompson's Deposition Testimony

Thompson next asks the court to exclude her deposition testimony, because she we will be available to testify live and her

deposition constitutes inadmissible hearsay. (Pls.' MIL at 7.) She walks back this request in her reply brief to instead ask the court to exclude her deposition testimony for non-impeachment purposes. (Pls.' Reply at 4.)

Hearsay is an out of court statement offered for the truth of the matter asserted, Fed. R. Evid. 801(c), and is inadmissible unless otherwise allowed under statute, evidentiary rule, or the Constitution. Fed. R. Evid. 802. There are numerous exclusions and exceptions to the general prohibition on hearsay. *See* Fed. R. Evid. 801(d), 803, 804.

The Defendants correctly assert that Thompson's deposition testimony satisfies multiple Rule 801(d) hearsay exclusions, under which the relevant out-of-court statements are not hearsay. (Defs.' Opp. at 5.) First, Thompson's deposition qualifies as a Rule 801(d)(2) party-opponent statement. Under this Rule, out-of-court statements made by opposing parties can be used against them at trial. Fed. R. Evid. 801(d)(2)(A). Courts in this circuit have found an opposing party's deposition testimony to be admissible on this basis. *See, e.g., United States v. Pilitz*, 17-CR-0053 (JS) (ARL), 2022 WL 14763150, at *2 (E.D.N.Y. Oct. 25, 2022); *Rumain v. Baruch Coll. of City Univ. of N.Y.*, No. 06-CV-8256 (PKC) (MHD), 2009 WL 2905445, at *2 (E.D.N.Y. Sept. 2, 2009). Thompson's out-of-court deposition testimony properly qualifies as a party-opponent statement if introduced against her.

Next, prior inconsistent statements made by Thompson in deposition can be introduced to impeach her at trial under Rule 801(d)(1)(A). (*See* Defs.' Opp. at 5.) This Rule allows prior statements made by a witness subject to cross-examination to be admitted when the statements contradict the witness's in-court testimony and were given under penalty of perjury at a trial, hearing, proceeding, or deposition. Fed. R. Evid. 801(d)(1)(A). Again, courts in this circuit have recognized deposition testimony of a party who is present at trial as falling within this exclusion. *See, e.g., United States v. Truman*, 688 F.3d 129, 142 (2d Cir. 2012); *Jean-Laurent*, 840 F. Supp. 2d at 543.

Thompson's deposition could also be admissible under Rule 801(d)(1)(B) to rehabilitate her credibility. Rule 801(d)(1)(B) allows witnesses subject to cross-examination to introduce prior statements consistent with their in-court testimony to rebut charges of fabricating in-court testimony. Fed. R. Evid. 801(d)(1)(B). "The prior consistent statement exclusion privileges statements made by a declarant before any motive to fabricate arose, versus those made after." *Simpson v. City of New York*, No. 12-CV-6577 (KBF), 2015 WL 5918182, at *3 (S.D.N.Y. Oct. 9, 2015).

Plaintiff's MIL #2 is therefore DENIED. Thompson's deposition testimony can be introduced by the Defendants, either as a party-opponent statement or prior inconsistent statement, or by Thompson as a prior consistent statement to rehabilitate credibility after a charge of fabricated testimony. Use of the deposition must also comport with Rule 613 and Federal Rule of Civil Procedure 32.

In sum, Plaintiff's MILs are GRANTED IN PART and DENIED IN PART.

**B.  Defendants' Motions in Limine**

**1.  Defendants' MIL # 1: Spota's Criminal Indictment, Trial, Conviction and Sentencing**

The Defendants first seek to exclude evidence of Spota's criminal indictment, trial, conviction, and sentencing for use in Thompson's case-in-chief under Rules 401, 402, and 404, and for impeachment purposes under Rules 609 and 403. (Defs.' MIL at 4.) Spota was convicted in 2019 of conspiracy to tamper with witnesses and obstruct an official proceeding, witness tampering, obstruction of a grand jury investigation, and being an accessory after the fact to a Suffolk County Police Chief's deprivation of civil rights. (*Id.*)

Starting with use of this evidence in Thompson's case-in-chief, the Defendants are correct that Spota's convictions in no way bear on Thompson's employment discrimination claim. The allegations in this

matter do not overlap with the conduct leading to Spota's convictions—covering up a police officer's assault of an arrestee. Though the cover-up was ongoing when Thompson was terminated, (Defs.' 56.1 St. ¶¶ 4-5), there is no indication that the two are related. As such, Spota's convictions are irrelevant to Thompson's case-in-chief under Rule 401.

These convictions can, however, be used to impeach Spota. Prior crimes in which liability requires proof of a dishonest act or false statement are admissible against a witness for impeachment purposes. Fed. R. Evid. 609(a)(2). Here, Spota was charged with witness tampering under 18 U.S.C. § 1512(b), obstruction of justice under 18 U.S.C. § 1503(a), conspiracy to engage in witness tampering and obstruction of justice under 18 U.S.C. § 1512(k), and accessory after the fact to deprivation of civil rights per 18 U.S.C. § 3. *See* Indictment, *United States v. McPartland*, No. 17-CR-0587, 2017 WL 4838319 (E.D.N.Y. Oct. 25, 2017).

These charges involve proof of a dishonest fact or false statement. Starting with witness tampering, § 1512(b) imposes liability for those who "knowingly use[] intimidation, threats, or corruptly persuade[] another . . . to engage[] in misleading conduct toward another person, with intent to (1) influence, delay or prevent the testimony of another person in an official proceeding; [or] (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding." § 1512(b). Similarly, § 1503(a) creates obstruction of justice liability for those who "corruptly . . . endeavor[] to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States . . . [or] the due administration of justice." § 1503(a). Because both charges, and conspiracy to commit them, involve corruptly persuading another to lie to or withhold information from the authorities, they require proof of a "dishonest act or false statement" to establish liability. The Indictment also alleged that Spota was an accessory after the fact to the deprivation of civil rights by "knowingly and intentionally receiv[ing]

and assist[ing] one or more offenders, in order to hinder and prevent the offenders' apprehension, trial and punishment." Indictment, *McPartland*, 2017 WL 4838319. This charge also involves an act of dishonesty—intentionally preventing the apprehension and punishment of someone known to have committed a crime.

The Defendants assert that even if the charges against Spota are within the purview of Rule 609, they should still be excluded as unduly prejudicial under Rule 403 because Spota's criminal charges have no bearing on Thompson's employment discrimination claims. (Defs.' MIL at 5.) Yet, this assertion confuses admission of Spota's charges for Thompson's case-in-chief with admission for impeachment purposes. The probative value of Spota's criminal charges when admitted pursuant to Rule 609 is their insight into Spota's credibility as a witness. Whether or not they bear on his having committed intentional racial discrimination is immaterial. The Defendants' argument that a Rule 403 balancing test advises exclusion of the criminal charges, due to their low probative value, is therefore flawed, as Defendants misunderstand the probative value of the evidence. In any event, crimes that qualify under Rule 609(a)(2) are *per se* admissible and not subject to exclusion under Rule 403. *See* Fed. R. Evid. 609(a)(2); *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005).

Accordingly, Spota's convictions for witness tampering, obstruction of justice, conspiracy to tamper with witnesses and obstruct an official proceeding, and accessory after the fact to a deprivation of civil rights are admissible for impeachment purposes under Rule 609(a)(2). *See also United States v. Jefferson*, 623 F.3d 227, 234 (5th Cir. 2010); *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. 2000). These convictions involve acts of dishonesty that a jury may find useful in weighing Spota's credibility. To minimize this risk of prejudice to Spota, though, Thompson will be limited to inquiring only about the nature

of the convictions, the date of their disposition, and the sentences imposed. *See Martino*, 131 F. Supp. 2d at 315.[2]

Defendants' MIL # 1 is thus GRANTED IN PART and DENIED IN PART.

### 2.   Defendants' MIL # 2: Referring to Spota as a Felon, Prisoner or Disbarred Attorney

Relatedly, the Defendants ask the court to prohibit Thompson from referring to Spota as a "felon," "prisoner," or "disbarred attorney" because these terms are not probative and are unfairly prejudicial to the Defendants under Rules 401, 402, and 403. (Defs.' MIL at 6.)

Some courts in this circuit have limited prosecutors' ability to refer to criminal defendants as "convicted felon[s]," as to avoid biasing juries. *See, e.g., United States v. Belk*, 346 F.3d 305, 311 (2d Cir. 2003); *United States v. Scott*, No. 21-CR-429 (AT), 2022 WL 1026725, at *3 (S.D.N.Y. Apr. 5, 2022). Yet, others have done the opposite. *See United States v. White*, No. 08-CR-0682 (NGG), 2009 WL 4730234, at *3 (E.D.N.Y. Dec. 4, 2009). These cases all occurred in the context of criminal trials, however, where there is potential for improper criminal conviction on the basis of felon status, and may not be analogous to a witness testifying in a civil trial.

As discussed *supra*, Spota's convictions are admissible for impeachment purposes inasmuch as they pertain to his credibility as a witness. To that end, the court will allow references to Spota as a "felon," "prisoner," and "disbarred attorney" when impeaching him through disclosure of the crimes discussed *supra*. Because of the risk that this language could be inflammatory, however, Thompson should cabin use of these terms, and any similar ones, to discussions of Spota's credibility as a witness. The court further instructs Thomson not to overuse these characterizations and retains authority to strike

---

[2] Thompson is also permitted to reference Spota's June 2020 disbarment as a consequence of his conviction. (*See* Decl. of Mary Ellen Donnelly (Dkt. 155) at 1.)

references of this nature at trial. These protections should limit the prejudice to Spota, if any, from Thompson's use of the contested terms.

Therefore, the court DENIES Defendants' second MIL, but places restrictions on the use of the terms "felon," "prisoner," and "disbarred attorney."

### 3. Defendants' MIL # 3: Evidence, Testimony, or References to Dismissed Claims

The Defendants next argue that evidence, testimony, or references to Thompson's dismissed claims should be excluded under Rules 401, 402, and 403. A number of Thompson's claims have been dismissed throughout the course of this litigation. Thompson named Kathleen Wagner as a Defendant in her initial Complaint but dropped Ms. Wagner from the Amended Complaint. (*See generally* Compl. (Dkt. 1); Am. Compl.) Thompson's claims against Robert Ewald, as well as her retaliation and hostile work environment claims against Spota and Suffolk County, were dismissed at summary judgment. (Sept. 30, 2018 Ord. at 3-4.) The Defendants ask the court to bar evidence or reference to these claims.

The Defendants are correct that a plaintiff may not introduce previously dismissed claims, or evidence thereof, at trial under Rules 401 and 402. *See Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758 (KAM) (LB), 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014); *Ham v. Klusek*, No. 19-CV-5355 (RPK) (TAM), 2022 WL 6778671, at *3 (E.D.N.Y. Oct. 10, 2022). Accordingly, the court GRANTS the Defendants' motion to exclude evidence, testimony, or reference to any claims against Kathleen Wagner or Robert Ewald, or claims of retaliation and hostile work environment against Spota or Suffolk County.[3]

---

[3] The court declines to grant Defendants' MILs on the basis that the Plaintiff failed to address the MIL in its briefing. The Defendants repeatedly cite *Castro v. City of New York*, No. 05-CV-593 (KTD) (MHD), 2010 WL 11586591, at

4.   Defendants' MIL # 4: Evidence or References to the "Monkey in a Suit" Comment

The Defendants' MIL # 4 asks that court to exclude evidence or references to ADA Wagner's "monkey in a suit" comment under Rules 401, 402, and 403 (Defs.' MIL at 8; Defs.' Reply at 5.) They point to a line in the R&R on Summary Judgment that "no reasonable jury could infer discriminatory intent" from the "monkey in a suit" comment to argue that it has no probative value. (*Id.* (quoting R&R on Summ. J. at 48).) Thompson responds that the "monkey in a suit" comment is integral to her case for intentional discrimination and that the Defendants put the comment at issue by listing documents in the JPTO that reference it. (Pls.' Opp. at 5-6.)

The court DENIES the Defendants' MIL # 4 because the comment is clearly relevant to Defendants' discriminatory intent. Thompson alleges that the Defendants engaged in intentional racial discrimination, and the comment is purportedly evidence giving rise to an inference of discriminatory intent. The comment has a tendency to make the alleged intentional racial discrimination more or less probable. *See* Fed. R. Evid. 401. The relevance inquiry ends there.

The line in the R&R on Summary Judgment that Defendants cite does not imply that the comment is irrelevant. (R&R on Summ. J. at 8.) The R&R concludes that Thompson had produced sufficient evidence,

---

*7 (S.D.N.Y. Aug. 11, 2010), for the proposition that the court should grant motions *in limine* where an opposing party fails to address the motion in its opposition brief. (Defs.' Reply at 4, 5, 6, 11). Yet, the case that *Castro* cites involves granting a defendants' motion to dismiss where the plaintiff had not opposed dismissal in its briefing. *See Castro,* 2010 WL 11586591, at *7 (citing *Katz v. Image Innovations Holdings, Inc.,* 542 F. Supp. 2d 269, 275 (S.D.N.Y. 2008)). Failure to oppose a motion to dismiss is not analogous to failure to oppose a motion *in limine,* the latter of which is granted or denied to aid the trial process by enabling the court to rule on admissibility of evidence in advance of trial. *Palmieri,* 88 F.3d at 141. As at trial, the court may or may not sustain evidentiary objections without hearing argument. The court will therefore not grant Defendants' MILs solely because the Plaintiff has not opposed the motion in her briefing.

taken as a whole, to show a *prima facie* case of discrimination. (*Id.* at 47.) The line that Defendants cite notes that individual statements put forth by Thompson, including the "monkey in a suit" comment, did not *on their own* meet this burden. (*Id.* at 47-48.) The court will not exclude individual statements because they do not create an inference of discrimination taken on their own. The jury will have the opportunity to assess whether the "monkey in a suit" comment, in the context of Thompson's entire body of evidence, suggests Defendants acted with discriminatory intent. Though the comment could be harmful to the Defendants' case, as all inculpatory evidence necessarily is, it is not "unduly prejudicial" such that it warrants exclusion under Rule 403. *See United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ("[T]he prejudice that Rule 403 is concerned with involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.").

> 5.  Defendants' MIL # 5: Evidence or References to Other Legal Actions or Claims of Discrimination Against Defendant

The Defendants further move to exclude evidence or reference to other legal actions or claims of discrimination against them. (Defs.' MIL at 9.)

Courts in this circuit generally exclude evidence of related lawsuits, due to concerns of confusing the jury and unfairly prejudicing defendants. *See Crawford v. ExlService.com, LLC*, No. 16-CV-9137 (LAP), 2019 WL 6284228, at *1 (S.D.N.Y. Nov. 25, 2019); *Figueroa v. Boston Sci. Corp.*, No. 00-CV-7922 (DC), 2003 WL 21488012, at *4 (S.D.N.Y. June 27, 2003); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 254-55 (S.D.N.Y. 2012). There is, however, a narrow exception to this rule for plaintiffs asserting a claim of hostile work environment, a pattern of discrimination, or of retaliation stemming from participation in an earlier lawsuit against an employer. *See Puglisi v. Town of Hempstead Sanitary Dist. Co. 2*, 11-CV-445 (PKC), 2014 WL 12843521, at *3 (E.D.N.Y. Jan. 27,

2014); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997); *Gaffney v. Dep't of Info. Tech. and Telecomm.*, 579 F. Supp. 2d 455, 459-60 (S.D.N.Y. 2008); *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).

Here, the narrow exception to the general prohibition of evidence on related lawsuits does not apply. Thompson's hostile work environment and retaliation claims were dismissed at summary judgment. (Sept. 30, 2018 Order at 3-4.) In any event, her retaliation claim did not pertain to retribution for participating in a lawsuit. (Am. Compl. ¶¶ 37-38). Nor has Thompson provided any reason to believe that the various discriminatory acts against her and her former colleagues were so similar as to possibly constitute a practice of discrimination. Accordingly, any evidence or reference to other legal actions or claims of discrimination against Defendants will be barred.

The court will therefore GRANT this MIL.

### 6. Defendants' MIL # 6: Testimony From or Evidence About Rashika Hettiarahchi

The Defendants ask the court to exclude the testimony of Rashika Hettiarahchi because she lacks the relevant personal knowledge of the facts leading up to Thompson's termination to qualify as a witness, and because her testimony would be irrelevant and overly prejudicial under Rules 401 and 403. (Defs.' MIL at 11.) Ms. Hettiarahchi was an ADA in the Suffolk County DA's Office who was terminated and has brought a lawsuit against Spota and Suffolk County alleging race and national origin-based discrimination. (Defs.' Reply to Pfs.' 56.1 St. (Dkt. 94) at 19; Defs.' MIL at 11.)

Under Rule 602, a witness may testify on a matter only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Defendants have not shown that Ms. Hettiarahchi lacks the personal knowledge needed to qualify as a witness. Neither party has noted the specific topics that Ms. Hettiarahchi would discuss if called to testify. The court

cannot discern whether Ms. Hettiarahchi possesses sufficient personal knowledge to support her testimony without this information. Working in a different Bureau than Thompson also does not imply that Ms. Hettiarahchi categorically lacks sufficient personal knowledge to testify at all in this matter. (*See* Defs.' MIL at 11.) She still could have been made aware of the circumstances leading to Thompson's firing by virtue of working for the same employer. Though Ms. Hettiarahchi's testimony may also raise hearsay issues, the court can police these at trial.

That being said, testimony on Ms. Hettiarahchi's lawsuit against Spota and Suffolk County is inadmissible for the reasons discussed *supra* in response to Defendants' MIL # 5.

For these reasons, the court GRANTS IN PART and DENIES IN PART Defendants' MIL # 6.

> 7.   Defendants' MIL # 7: Evidence of or References to Disciplinary History of Other Coworkers Outside the Relevant Time Period

The Defendants next seek to exclude the disciplinary history of other coworkers "outside the relevant time period." (Defs.' MIL at 12.) More specifically, they argue that evidence of ADAs being counseled on performance issues from 2003 to 2007 should be inadmissible because a different standard was in place than when Thompson was terminated. (*Id.*) Thompson responds that the disciplinary history of other ADAs is relevant comparator evidence to illustrate discrimination against her, and that the change in disciplinary policies was, in part, the mechanism through which discrimination operated. (Pls.' Opp. at 7-8.) Thompson also argues that whether a plaintiff is similarly situated in all material respects to a comparator is a question of fact for the jury. (*Id.* at 7.)

Thompson is correct that the appropriateness of a comparator is a question for the jury. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39

(2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014) ("[Plaintiff's] evidence of comparators, although not overwhelming, is sufficient for a reasonable jury to have ruled in his favor on this claim."); *Ucar v. Conn. Dep't of Transp.*, No. 14-CV-0765 (JCH), 2017 WL 4022798, at *3 (D. Conn. Sept. 11, 2017). "[W]here a plaintiff seeks to establish the minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiffs to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Wallen v. Teknavo Grp.*, No. 12-CV-6196 (MKB) (SJB), 2018 WL 1278317, at *17 (E.D.N.Y. Feb. 22, 2018). Where the comparators are insufficiently similar, though, some courts have refused to admit proffered comparator evidence before it is seen by a jury under Rule 403. (*See* Defs.' Reply at 8 (citing *Boger v. N.Y. State Off. of Parks.*, No. 17-CV-289 (MAD) (TWD), 2019 WL 6038545, at *5 (N.D.N.Y. Nov. 14, 2019).)

Here, there was a finding at summary judgment that Thompson, by showing disparate treatment through comparison to the disciplinary history of other co-workers, met her *de minimus prima facie* burden to show an inference of discrimination. (R&R on Summ. J. at 44.) Thompson therefore made a sufficient showing that other ADAs are a relevant comparator to survive summary judgment. This preliminary finding does not take the determination of comparator status away from the jury; to the contrary, it suggests that evidence on other ADAs is relevant under Rule 401, and allows the jury to consider whether the other ADAs are *sufficiently* similar to give rise to an inference of discrimination. This conclusion also distinguishes the present case from *Hettiarachchi v. County of Suffolk*, where the court rejected the proposed comparators at summary judgment. (*See* Ex. A to Supp. Decl. of Mary Ellen Donnely (Dkt. 164-1) at 2-3.) The court will not at the motion *in limine* stage disturb the summary judgment holding and take the ultimate determination of the comparator's appropriateness away from the jury.

Therefore, the court DENIES the Defendants' MIL # 7 to exclude evidence of or references to the disciplinary history of other coworkers outside the relevant time period.

   8.   Defendants' MIL # 8: Testimony From Krishna Thompson, Carl Francis, Hershell Martin, or Camille Sanches

The Defendants' MIL # 8 calls for the court to exclude Krishna Thompson, Carl Francis, and Hershell Martin as witnesses to discuss Thompson's emotional distress because they are not experts qualified to discuss her emotional condition. (Defs.' MIL at 13-14.) Thompson responds that Krishna Thompson, Carl Francis, and Hershell Martin will testify as lay witnesses about Thompson's "mood, conduct, and behavior," per Rule 701, and that their credentials to testify as experts is therefore irrelevant. (Pls.' Opp. at 9.)

Under Rule 701, lay opinion testimony is proper if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The first two factors under Rule 701 depend on the specific nature of the testimony offered by these witnesses and cannot be evaluated at this stage. The third factor, however, turns on the broader topic to which they will testify.

Thompson has stated that she is seeking "garden variety" emotional damages in the instant action. (Status Report (Dkt. 41) at 1.) In this circuit, garden variety emotional distress awards are those based on injury described in "vague or conclusory terms," and "are not supported by any medical corroboration." *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009); *see also United States v. Asare*, 476 F. Supp. 3d 20, 37 (S.D.N.Y. 2020). Claims of this nature can therefore be made out through non-scientific or non-technical testimony by lay witnesses. Thompson's mood, conduct, and behavior are therefore proper subjects for lay testimony, as they go to showing garden variety

emotional damages. Accordingly, the court denies the Defendants' motion to exclude the testimony of Krishna Thomas, Carl Francis, and Hershell Martin under Rule 702. Their testimony on garden variety emotional damages is proper lay opinion testimony. Moreover, any issues regarding admissibility if this trial were bifurcated into liability and damages stages, (Defs.' Reply at 10), can be addressed after a motion for bifurcation is considered by the court.

The Defendants also ask the court to exclude the testimony of Camille Sanches, a paralegal in the office of Thompson's counsel, on the grounds that it is based on hearsay and that her methodology has not been authenticated. Sanches is expected to testify on her calculation of average entry times of ADAs in the Narcotics Bureau. (Defs.' MIL at 14-15.) The Defendants assert that Ms. Sanches has no special skills for which the jurors would need her testimony and that the jurors can review time entry records themselves. (*Id.*)

Starting with the hearsay issue, the key card entries on which Ms. Sanches bases her testimony may be properly admissible as business records. Rule 803(6) provides an exception to the general prohibition on hearsay for records of regularly conducted activity if: (1) the records are made at or near the time of the event they record by someone with knowledge; (2) the records are kept in the course of regularly conducted business activity; (3) making the record was a regular practice of that activity; (4) the foregoing conditions are shown by testimony of the records custodian or another qualified witness; and (5) the opponent does not show that the source of the information and method of preparation indicates a lack of trustworthiness. Fed. R. Evid. 803(6). This court recently admitted an employer's time sheets under this exception. *See United States v. Chang*, 574 F. Supp. 3d 94, 100-01 (E.D.N.Y. 2021) (admitting a city fire department's time sheets under Rule 803(6)). If Thompson can put forward a records custodian or qualifying witness to testify that the requirements of Rule 803(6) are met, then the key card entries will be admissible on this basis.

Turning to reliability and usefulness, Ms. Sanches' testimony may be admissible as summary testimony of voluminous writings. Under Rule 1006, a party can use a "summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Summaries prepared pursuant to this Rule are themselves admissible evidence. *United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013). The offering party must, however, lay a proper foundation for admissibility of the underlying materials and show that the summary is accurate before the summary can be admitted. 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.05. There is also no requirement that the witness be an expert, though expertise may go to weight of their testimony. *Id.*; *United States v. Lebedev*, 932 F.3d 40, 50 (2d Cir. 2019) (noting the distinction between expert testimony and summary testimony under Rule 1006.)

Ms. Sanches's testimony may be admissible along this basis. The records that her calculation summarizes are indeed voluminous. The JPTO notes that the document on key card entries is 150 pages long. (JPTO at 11.) Having the jury examine these records on their own would be impracticable, despite the Defendants' contention otherwise. (*See* Defs.' MIL at 15.) Ms. Sanches's summary calculation and testimony would help avoid this. Moreover, a simple average of the entry times is a basic tabulation that qualifies as a summary. *See e.g.*, *Brand* v. *Comcast Corp.*, 302 F.R.D. 201, 212 (N.D. Ill. 2014) (finding that a tabulation of total training hours for each employee was a proper summary under Rule 1006); *Darowski v. Wojewoda*, No. 15-CV-803 (MPS), 2017 WL 11506877, at *3, n.1 (D. Conn. Dec. 19, 2017) (leaving open the possibility of admission of a simple average calculation under Rule 1006). Thompson will have to show at trial that Ms. Sanches's calculations rest on a proper foundation and are accurate. If these showings are made, and withstand the Defendants' cross-examination, Ms. Sanches's summary calculation can be introduced into evidence.

Alternatively, if the Defendants stipulate to the average arrival times of the ADAs in the Narcotics Bureau, Ms. Sanches's testimony will be unnecessary. The Defendants' nonresponse to Thompson's previous attempts to agree to a stipulation does not, however, qualify as a tacit admission of fact. The parties must agree to a stipulation, or Ms. Sanches will have to testify subject to the conditions of Rule 1006.

For the foregoing reasons, the Defendants' MIL # 8 is DENIED.

> 9. Defendants' MIL # 9: Hearsay Evidence of Discrimination by Spota or Suffolk County

Lastly, the Defendants ask the court to issue a blanket exclusion of "hearsay evidence of discrimination against Mr. Spota and the County." (Defs.' MIL at 15.) The court declines to do so. Numerous hearsay exceptions and exclusions exist, which could make admissible certain out-of-court statements that the Defendants seek to bar. For example, Spota's out of court statements may meet the Rule 801(d)(2) party-opponent exclusion and be admissible on this basis. *See* Fed. R. Evid. 801(d)(2). The court must be apprised of the specific out-of-court statement that Thompson seeks to use against the Defendants before determining whether it is inadmissible hearsay.

The court therefore DENIES the Defendants' motion to issue a blanket exclusion of all hearsay evidence of discrimination made by Spota or Suffolk County.

Accordingly, the Defendants' MILs are GRANTED IN PART and DENIED IN PART.

## IV. CONCLUSION

For the reasons set forth above:

Plaintiff's Motion No. 1 is GRANTED IN PART and DENIED IN PART

Plaintiff's Motion No. 2 is DENIED

Defendants' Motion No. 1 is GRANTED IN PART and DENIED IN PART

Defendants' Motion No. 2 is DENIED

Defendants' Motion No. 3 is GRANTED

Defendants' Motion No. 4 is DENIED

Defendants' Motion No. 5 is GRANTED

Defendants' Motion No. 6 is GRANTED IN PART and DENIED IN PART

Defendants' Motion No. 7 is DENIED

Defendants' Motion No. 8 is DENIED

Defendants' Motion No. 9 is DENIED.

SO ORDERED.

Dated:     Brooklyn, New York
           November 23, 2022

                                          s/Nicholas G. Garaufis
                                          _____
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge